## Conrad *against* Farrow.

In order to prove the execution of a paper by secondary evidence, it is only necessary for the party to show, that he has neglected nothing which afforded a reasonable hope of procuring the testimony of the subscribing witness.

The confession of a party,that he executed a paper, is not secondary to proof of handwriting.

ERROR to the common pleas of *Alleghany* county.

William Conrad against John Farrow; Replevin. The plaintiff, in order to enable him to give in evidence a bill of sale of the property in dispute, to which Joseph Turner and Samuel Bennett were witnesses, gave the following evidence:

Moses Brawdy, sworn.—I have had this subpœna in my hands for about eight days. I have made inquiry and cannot find where either Samuel Bennett or Joseph Turner resides. I had a subpœna for them some courts ago in this case. I then made inquiries for them and was told at the Exchange, that a person of the name of one of them, had gone down the river; and another of the name of the other, over the mountains. I did not at this time go out of the city to inquire after them. I inquired at the Exchange and the other public houses, and at such places as I thought I might learn any thing about them. When I had the subpœna before at the December court of last year, I went into the country but could learn nothing of them. This paper (bill of sale,) was given to me in order to make inquiry to prove the handwriting of Bennett, Turner, and Farrow, and I could find no person who knew the handwriting. Cross examined. The first person I inquired of, was the bar-keeper at Badgley's in the Diamond. I also showed the names to M. B. Lowrie, Esq., Charles H. Israel, Esq., and Hutchinson & Ledlie. I then went to Mr. Kingston, and sent the paper by a boy up to his room, where he was said to be sick—the boy brought me word that Mr. Kingston said he did not know where the persons were or any thing about their handwriting. I inquired of such persons as I thought would be likely to know. When I had the subpœna before I went to Wilkinsburg, and inquired for these witnesses at the house where Farrow had resided, and could learn nothing of them.

C. Darragh, Esq., sworn.—I know John Farrow the defendant, and Joseph Turner. Farrow resided in 1833, in Wheeling, Virginia, as also did Turner. Farrow and Turner moved to Alleghany county some time in the Spring of 1833, and Farrow kept a public house in Wilkinsburg in Alleghany county. Farrow left Pittsburgh for Wheeling with his family some time in the fall or winter of 1833. I saw Turner at Farrow's when he kept tavern at Wilkinsburg, but have not seen or heard of him since. It was in the

[Conrad v. Farrow.]

summer of 1833 that I last saw Turner—I know nothing about Samuel Bennett. When I saw Turner at Farrow's tavern in this county, he was acting as bar-keeper. The bill of sale was given to me by Mr Conrad the plaintiff—I saw the plaintiff, the defendant, and Joseph Turner, within forty-eight hours thereafter—as I understood from all of them, it was within forty-eight hours after their arrival from Wheeling, that I first saw them. Cross examination. I do not know but Turner is now residing in Alleghany county.

Plaintiff's counsel having, as he deemed, laid the necessary grounds for the introduction of secondary evidence showing the execution of the bill of sale, then offered to prove by C. Darragh, Esq.—" That John Farrow the defendant, had stated to witness that he, defendant, had executed the bill of sale, which is now shown to him, of the articles mentioned in plaintiff's narration, that he owed the money to the plaintiff, in consideration of which the transfer had been made, and that this admission by defendant was in the presence of Turner, one of the subscribing witnesses to the bill of sale." To which evidence defendant's counsel objected; the court overruled the evidence, to which the plaintiff's counsel excepted.

Plaintiff's counsel then offered, in support of his claim, to prove by C. Darragh, Esq.—" That the defendant John Farrow, at different times, admitted to him, that the property in plaintiff's declaration set forth, was the property of plaintiff, and that he, defendant, had sold it to plaintiff for a debt which he owed plaintiff. Witness in reply to a question put by the court, having said that he first derived his knowledge of the property being in the plaintiff from a bill of sale which was in his possession, before John Farrow the defendant called upon him. To which evidence defendant's counsel objected; the court overruled the evidence; and upon exception by plaintiff's counsel, sealed a bill of exceptions.

The court thereupon charged the jury that they had no evidence of plaintiff's claim; and directed them to find a verdict for defendant, which was rendered accordingly.

*Livingston*, for plaintiff in error.
*M'Candless*, for defendant in error.

Per Curiam.—The rule of the common law, which prefers evidence of hand-writing to confession, seems to have been carried to an extreme. Undoubtedly nothing ought to be neglected, which affords a reasonable hope of procuring the testimony of the subscribing witnesses, who are supposed to know the minutest particulars of the act of execution; but the rule being satisfied in that respect, there seems to be no reason why the confession of the party should be deemed secondary to evidence of handwriting. As regards endeavours to procure the subscribing witnesses, the rule is not to be strained beyond the requirements of convenience. When a party finds names subscribed to the attestation, without a visible ligament

v.—3 s

of connection with any thing in the known world, what is he to do? Certainly not to inquire of every one in the world. In the investigation of old transactions, the witnesses sometimes seem to have dropped, for the occasion, from the clouds; and where no particular avenue to a knowledge of them promises to be more productive than another, it is hard for a party to determine what to do. We certainly would not expect him to stand at the way side, inquiring of every one who passed. The research here, however, was not entirely fruitless. The agent learned that a person bearing the name of one of the witnesses had gone down the river; and that another had gone over the mountains. Was he to follow them to the verge of the state? such pursuit would have been idle. Under these circumstances, the confession that the defendant had executed the bill of sale, ought to have been received. His confession, too, that the property in dispute belongs to the plaintiff, ought to have been received as evidence of a title independent of the bill of sale.

Judgment reversed, and a *venire de novo* awarded.