34   525
130    18
34   525
'd184 129

## Irwin *et al. versus* Irwin *et al.*

The note in writing which is required to take a parol title out of the statute of frauds, must be proved like any other private instrument. If it cannot be produced, it must be shown, first, to have existed; next, that it is lost, which may be inferred from diligent, but unsuccessful, search for it, in the place where, if still existing, it ought to be found; and then, its contents may be proved, by any person having knowledge of them, with the same effect as the paper itself would have, if produced.

But such alleged writing cannot be proved by the admissions and declarations of the parties as to its contents; without search for, or proof of the loss of, the instrument.

A devisee cannot be converted into a trustee of the legal title, except on proof of an agreement to that effect, between him and the devisor, before the making of the will.

It is the duty of the court to give a binding instruction to the jury, as to what is sufficient evidence of a parol sale of lands, and of part performance, to take the case out of the statute of frauds.

Error to the Common Pleas of *Westmoreland county*.

This was an ejectment by William Irwin, and others, devisees of Samuel Irwin, deceased, against William Irwin, and others, the heirs at law of James Irwin, deceased, for a tract of 300 acres of land, in Westmoreland county, called the Jew's land.

Both parties claimed title under John Irwin, formerly an associate judge of Westmoreland county, who by his will, dated the 10th September 1818, and admitted to probate on the 1st May 1822, devised the same to his brother James Irwin, in fee.

The plaintiffs alleged that Judge Irwin had written to Samuel Irwin, a near relative, in Ireland, urging him to emigrate to this country, and promising, if he would do so, to give him the land in controversy. That Samuel did so, and soon after his arrival at the residence of Judge Irwin, in 1821, was put in possession of the premises in dispute, and that the judge had devised the land to James Irwin upon the express trust that he should hold it for Samuel.

After the death of Judge Irwin, James, his devisee, took off a piece of land, containing from 80 to 100 acres, from the tract in dispute, and give Samuel Irwin a lease for life of the remainder.

The remaining facts in the case are stated in the following charge to the jury, delivered in the court below:—

" In this action of ejectment, the plaintiffs seek to recover some 300 acres of land in this county. From the evidence and the admissions of the parties, it is certain, that Judge John Irwin was the owner of the land, prior to the alleged rights of the present parties. Judge Irwin made his will on the 10th September 1818, which was proved on the 1st May 1822. By this will, he

[Irwin *v.* Irwin.]

devised the land in dispute to James Irwin, Esquire, his brother, in fee simple. On the 24th November 1820, he made a codicil to his will, in which he made no alteration in the devise. This will conferred a good and perfect title in law upon James Irwin, which is now vested in the present defendants, and of course, gives them the right, unless the plaintiffs have shown a better right from Judge Irwin.

"They claim to have done so. They do not pretend that they had a deed or formal contract in writing; but they allege—1st. That Samuel Irwin, their father, being a resident in Ireland, was written to by Judge Irwin, to come to this country, and he would give him this 'Jew's tract.' That Samuel did come, in pursuance of that, and took possession; and that, therefore, there was a note or memorandum in writing, signed by the party, Judge Irwin, which, upon being complied with, gave a title according to the statute of frauds. The only evidence we have of such letters, is the loose declarations of Judge and James Irwin that they had written such letters; and that letters were received by Samuel Irwin, in Ireland. What the contents of these letters were, we have no evidence. That testimony was withdrawn by the plaintiffs, and the point was left to rest upon loose declarations of the parties. We do not think that this is sufficient to make out a contract in writing. The letters themselves, if forthcoming, were the best evidence; and if lost, or destroyed, their contents would be the next best proof. This having been withdrawn, left the case merely on the loose declarations proved now, after a lapse of near forty years. Such evidence would not be sufficient to establish a written contract, and would be within all the mischief of the statute of frauds; too vague and uncertain to establish a title to land, or any equity in opposition to the legal title. We therefore decide and instruct you, that the plaintiffs have failed to make out a title in writing, so as not to be affected by the statute of frauds.

"The next position relied upon by the plaintiffs, is, that Judge Irwin made a parol gift to Samuel of this land, and that in pursuance of that gift, Samuel went into the possession, and made such valuable and permanent improvements, as take the case out of the statute. A parol contract, to be available to give title, must be proved clearly; actual, exclusive, and notorious possession must be taken, after and in pursuance of the contract; and such improvements made, of a permanent character, as cannot be compensated in damages. The contract must be on a valuable consideration. This need not be in money, nor advantages to the vendor, but may be in disadvantage or prejudice of the right or interest of the vendee: as if the vendee was induced to part with his property, leave his home and move upon, occupy, and expend his money and labour upon the property. What, then, constitutes a contract so as

[Irwin *v.* Irwin.]

to take the case out of the statute? The construction of the law on this subject has undergone a material change within the last ten years. We are told that the evidence, in any case, ought to be clear, satisfactory, and certain. There ought to be no doubt in the description of the property. The subject of the contract; the terms of the contract; the consideration and the conditions, if any, should be established with equal certainty; for where a party asks to disregard the clear terms of a statute, by endeavouring to make out an exception to it, it ought not to be upon doubtful and equivocal testimony, nor upon vague and uncertain inferences. The intention of the one to give and grant, and the expectation of the other to take and enjoy, upon some kind of terms, which neither distinctly understood, and upon which they do not unite, will not be sufficient. If there was a parol contract, there must have been a time, a place, when and where the parties met and made it; its terms must have been talked over and comprehended, and agreed upon by both parties; and ordinary experience teaches, that unless reduced to writing, some witness must be called to the bargain, and particularly when the subject was so important as a tract of land; and the statute required that such a bargain should be put into writing.

"In the case of an alleged gift from a father to a son, the law is now settled by repeated decisions,' that the contract must be proved by direct and positive, express and unambiguous evidence. That is, it must be proved by some one who was present at the time it was made, and saw and heard the parties bargaining and agreeing, and uniting upon the terms of the contract. It must not be loose declarations of the parties, as to what had been agreed upon before, or what they intended to do hereafter; but a present agreement, definite in its terms, certain in its meaning, understood by both parties alike, and concluded upon as their bargain. This rule has also been extended to the case of a gift by a grandfather to his grandson: McCue *v.* Johnston, 1 *Casey* 306.

"The Supreme Court has not extended this stringent rule of requiring positive evidence to collaterals and distant relatives, and I am unwilling to go farther than they have prescribed. But in any case, there must be clear, satisfactory, and unambiguous evidence of the contract, deducible at least from the consistent declarations of both parties, containing the elements of a plain and certain contract.

"We have further, if the evidence is believed, the fact that about 1827 or 1828, Samuel Irwin accepted a lease or deed of the land from James Irwin, the devisee, for life. A claim by parol, being a mere equity and imperfect title, may be abandoned; and if the jury believe, Samuel did accept a lease for life, it would be an abandonment of any former claim under a parol contract, and his title thenceforth would be that contained in the writing; and

[Irwin v. Irwin.]

he would be estopped from alleging a precedent and inconsistent verbal contract: Rankin v. Simpson, 7 *Harris* 471.

"In view of all the evidence in this case on both sides, and sitting as a chancellor in a bill by the plaintiffs for the specific performance of a parol agreement, we are constrained to say, that in our judgment, the plaintiffs have failed to make out such a case of parol contract, as entitles them to a conveyance from the devisees of the land; and upon that ground, the plaintiffs are not entitled to recover.

"The next point relied upon is, that when Judge Irwin made his will, his design was to secure this land to Samuel Irwin, by devising it to James Irwin, in trust, that he would convey it to Samuel, when he would come on from Ireland. A mere design and intention of Judge Irwin that it should be so, if even clearly proved by parol, would not be sufficient to create a trust in James; it would be altering a will by parol, which the law will not permit; as all wills of land must be in writing, and cannot be altered or contradicted by parol.

"But if James Irwin, the devisee, was made acquainted with the wishes and designs of Judge Irwin, in regard to Samuel, and the judge communicated to him his will, that Samuel should have the land as soon as he came on from Ireland; and in consequence of this direction, and confidence and trust reposed in him, James Irwin agreed to accept the devise, and carry out the trust and confidence of the judge; then he would be a trustee for the use of Samuel, and his refusal afterwards to do so, would be a wrong upon Samuel; and if thus a trustee by wrong, the case is not within the statute of frauds; and James would be bound to convey. A state of facts that raises such a trust, must be by an agreement made before the date of the will, and may be proved by parol; and if so proved by clear, satisfactory, certain, and unambiguous evidence, a chancellor would compel a conveyance, and a court and jury will hold James and his devisees as trustees, and they would be compelled to give up the possession.

"We are called upon to say, as a matter of law, that there is no sufficient evidence of such a trust, to submit the question to the jury; we decline to do so; but submit that question to your determination; you have heard the evidence on the subject; you have heard it recited and repeated by counsel with their comments; and in connection with it, you will consider that Judge Irwin did not die for some three years after his will was made; during which time he made one codicil to his will. Samuel came into the country, and he made no alteration in the devise. You ought to be clearly convinced that there was such a trust, before you are justified in setting aside a solemn will, and converting a devisee therein into a trustee, by parol evidence.

"There is, in our opinion, sufficient evidence to submit to the

[Irwin v. Irwin.]

jury, and leave the decision of the fact to them; but the jury will be cautious, and weigh the evidence with care, and nothing short of a clear conviction of the fact, will justify them in finding such a trust, in the face of a clear devise in the will.

"If the jury believe there was such a trust, and that James Irwin wrongfully, in violation of the trust and confidence reposed in him by the judge, refused to convey the land to Samuel, then Samuel was the real owner in equity; James was a bare, naked trustee, having no beneficial interest; Samuel, by taking a lease for life, would not be estopped from insisting upon the trust, as against his fraudulent trustee; and the lease, in this aspect of the case, would interpose no obstacle to the plaintiffs' recovery.

"If there was a trust, Samuel was the real owner, and James had no right; and a conveyance to the owner, and accepted by him, from a person having no right, does not impair or prejudice the right of the owner."

To this charge the plaintiffs excepted; and a verdict and judgment having been given for the defendants, the plaintiffs sued out this writ, and here assigned the same for error.

*Todd*, for the plaintiffs in error.

*Cowan*, for the defendants in error.

The opinion of the court was delivered by

WOODWARD, J.—The note in writing, which is sufficient to take a parol title out of the Statute of Frauds and Perjuries, must be proved like any other private instrument. If it cannot be produced, it must be shown first, to have existed; next, that it is lost, which may be inferred from diligent but unsuccessful search for it in the place where, if still existing, it ought to be found; and then, its contents may be proved by any person having knowledge of them, with the same effect as the paper itself would have, if produced.

The letters between Judge John Irwin and his cousin, Samuel, while still in Ireland, were the notes in writing relied on by the plaintiffs; but they were not produced, nor proved to be lost, nor were their contents proved by any person who had ever seen them; but the court was asked to treat the admissions and declarations of the parties as evidence of the contents of the letters. Confessions and admissions are sometimes received as to the execution of an instrument, the subscribing witness to which cannot be produced: Conrad v. Farrow, 5 *Watts* 536; and in aid also of other evidence of contents: Mauri v. Heffernan, 13 *Johns.* 58; Corbin v. Jackson, 14 *Wend.* 619; but standing alone, and especially in a case where there has been no effort to produce the writing, they are insufficient proof of contents. If, in any instance,

[Irwin *v.* Irwin.]

they would be adequate, they would not be, where a statute had prescribed written evidence. It would avail but little that the Statute of Frauds and Perjuries had required a writing, to evidence a transfer of real estate, if, without search or proof of loss, the contents of the writing might be proved, not by a witness who had seen and read it, but by one who had only heard the parties talk about it.

It would be as well, it would be better indeed, to receive oral evidence of the bargain at once—because it would be more direct proof, than to receive such oral evidence concerning the written instrument. The truth is, the plaintiffs' case rested wholly in parol, and the learned judge was right, in refusing to consider the proofs as establishing a note in writing, such as would take the case out of the statute.

The question of a trust in James Irwin, for Samuel, was fairly left to the jury. The plaintiffs complain that the judge said, the trust could arise only from an agreement between John and James, before the date of the will of the former; but the judge gave an unanswerable reason why the trust could only so arise— to wit, that it would be impeaching the will by parol, to convert an absolute devise into a trust, without the consent of the devisee. He did not insist on a formal contract, much less on a written, but he said, if "James Irwin, the devisee, was made acquainted with the wishes and designs of Judge Irwin, in regard to Samuel, and the judge communicated to him his will, that Samuel should have the land as soon as he came from Ireland, and in consequence of this direction, and confidence and trust reposed in him, James Irwin agreed to accept the devise, and carry out the trust and confidence of the judge, then he would be a trustee for the use of Samuel, and if thus a trustee, the case is not within the Statute of Frauds, and James would be bound to convey." This was leaving the jury to infer the trust from all the circumstances in proof; and it is the misfortune of the plaintiffs that they could not persuade the jury to make the inference.

The rest of this case may be comprehended in the objections that are urged to the opinion expressed by the court, that the evidence did not make out such a parol sale by Judge Irwin to Samuel, and such part performance by Samuel, as would take the case out of the statute. While there was an abundance of proof that the judge had made declarations clearly importing an intention to sell or give the land to Samuel, there was his will devising it to James; there was the expressive act of ownership by James, in entering after Samuel was in possession, and cutting off 100 acres of the tract, and attaching it to the Coulter farm; and there was the lease of James, to Samuel and his wife, for life, for the 220 acres—the land in controversy. The proof of this lease was very full, though the instrument itself was not produced. Margaret

[Irwin v. Irwin.]

Shannon, Eleanor Davidson, and James Wilson all heard the paper read in Samuel's presence, and all agree in describing it as a lease to him and his wife Margaret for life.

Now, in view of such proofs, it is not very strange that the jury failed to find the alleged trust; nor strange, that the court thought a parol sale or gift was not proved.

Assuming all that was proved to have been uttered by Judge Irwin to be true, here were facts that proved incontestably, that whatever he may have said or intended, he had not indeed either sold or given the land to Samuel. Does a man, after a sale or gift of land to one, ordinarily devise it to another? Does the purchaser, in possession, ordinarily suffer the devisee to enter and take away one-third of his land without question or remonstrance? When, before this case, did such a purchaser accept a lease from the devisee of his vendor, and show it exultingly to his friends as the evidence of his title?

To hesitate on questions like these, were to offend the common sense and universal experience of men. The court properly considered these facts decisive against the plaintiffs. For the purpose of effectually controlling the action of the jury in such cases, it was said, in Brawdy v. Brawdy, 7 Barr 160, to be the duty of the court to grant new trials for ever.

The judgment is affirmed.