In re Estate of Mary McAuley. Appeal of John E. Ash, Executor, et al.

[Marked to be reported.]

*Trust and trustees—Declaration of trust—Equity.*

If a testator make a devise in terms absolute, but upon a private understanding had with his devisee, whether by the latter's express promise, or by his assent implied from his silence, that he will apply the devised estate to a specific purpose designated by the testator, a trust arises which a court of equity will enforce, unless unlawful in itself.

A brother devised a house to his sister. The sister at a time more than thirty days before her death signed a paper which was as follows: "By the request of my dear brother, my house on Duquesne Way is to be sold at my death, and the proceeds to be divided between the Home of the Friendless, and the Home for Protestant Destitute Women." *Held*, (1) that the paper was good and valid as a declaration of trust; (2) that it was immaterial that there was no affirmative testimony that the brother ever communicated the request to his sister Irwin v. Irwin, 34 Pa. 525, distinguished.

Argued Nov. 1, 1897. Appeal, No. 130, Oct. T., 1897, by John E. Ash, executor of the estate of Mary McAuley, deceased, from decree of O. C. Allegheny Co., March T., 1897, No. 4, overruling exceptions to adjudication. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Exceptions to adjudication. Before OVER, J.

James McAuley, who died on the 9th day of January, 1871, by his will, dated and executed November 26, 1870, made large bequests to his sisters, Margaret and Mary, and also devised to them a house and lot on Duquesne way, in the city of Pittsburg. Margaret died in 1871, a few months after her brother, and thereupon her interest in said property passed to her sister Mary, who died January 6, 1886, seized of said real estate, and leaving also a large personal estate. As respects the latter, she died intestate, but she left an instrument of writing, signed by her, a copy of which will be found in the opinion of Supreme Court, and was admitted to probate as the will of Mary McAuley. The two named beneficiaries are corporations of the state of Pennsylvania, and charitable institutions, within the mean-

ing of the act of assembly of April 26, 1855, which avoids bequests, devises, or conveyances to any body politic, or to any person, in trust for religious or charitable uses, unless made by deed or will, attested by two credible, and at the same time disinterested, witnesses, at least one calendar month before the decease of the testator or alienor.

Other facts appear by the opinion of the Supreme Court.

*Errors assigned* were in overruling exceptions to adjudication.

*D. F. Patterson* and *Wm. M. Watson*, with them *C. W. Jones*, *J. R. Sterrett* and *J. M. McBurney*, for appellants.—If a testator make a devise in terms absolute, but upon a private understanding had with his devisee, whether by the latter's express promise or his assent implied from his silence that he will apply the devised estate to some purpose designated by the testator, a trust arises which a court of equity will enforce, unless unlawful in itself: Shields v. McAuley, 37 Fed. Rep. 302; Wallgrave v. Tebbs, 2 Kay & J. 313; Tee v. Ferris, 2 Kay & J. 357; Springett v. Jennings, L. R. 10 Eq. 488; 3 Redf. on Wills, 485; 1 Story's Eq. Jur. sec. 256; Hoge v. Hoge, 1 Watts, 163; Church v. Ruland, 64 Pa. 432.

As shown in Hupfeld's Est., 5 Phila. 219, the burden is on these two charities to make out their title fully, and unless it is made to appear that the specific trust was created, Mary may have had discretion, and the cases show that, in the event of a discretion, the court cannot convert the arbitrary power—the absolute ownership—into a trust: McCormick v. Grogan, 1 Ir. Rep. Eq. 313; McCormick v. Grogan, L. R. 4 Eng. & Ir. App. 82; Creagh v. Murphy, 7 Ir. R. Eq. 182; Heck's Est., 170 Pa. 232; Bonner v. Rowdybush, 3 Penny. 93; Irwin v. Irwin, 34 Pa. 525; Moss v. Cooper, 1 J. & H. 352.

In order to show that the legal title to real estate held by one is, in fact, so held in trust for, or under such circumstances as that equity will compel a conveyance to another, the evidence must be clear and conclusive: Kincell v. Feldman, 22 Iowa, 363; Emerick v. Emerick, 3 Phila. 94; Lynch v. Cox, 23 Pa. 265; Adams' Equity, 26; Vint v. King, 2 Am. Law Reg. 724; Rupp v. Eberly, 79 Pa. 141; Wilkinson v. Adam, 1 Ves. & B.

466; Russell v. Jackson, 10 Hare, 198; Lomax v. Ripley, 3 Smale & Giffard, 48; Moss v. Cooper, 1 Johnson & Hemming, 352; Schultz's App., 80 Pa. 396.

*Thomas Patterson*, for the Pittsburg & Allegheny Home for the Friendless.—Where one who is the absolute owner of property attempts to make a disposition of it in accordance with a moral duty or obligation, all presumptions are in favor of the disposition, which will not be allowed to fail if it can possibly be made to act; and this presumption increases and gains strength where the disposition is in favor of a wife, a child, a purchaser, or a charity: Lucena v. Lucena, 5 Beavan, 249; Chapman v. Gibson, 3 Bro. C. C. 229; Cockerell v. Cholmeley, 1 Russ & My. 424; Attorney-General v. Tancred, 1 Eden, 14; Innes v. Sayer, 7 Hare, 377; Story's Eq. Jur. sec. 1171; Witman v. Lex, 17 S. & R. 90; Martin v. McCord, 5 Watts, 494; McLain v. School Directors, 51 Pa. 199; Vidal v. Girard's Exrs., 2 Howard, 192.

*H. & G. C. Burgwin*, for the Home for Aged Protestant Women, were not heard, but cited in their printed brief: Lewin on Trusts, 2; 3 Redfield on Wills, 485; Story's Eq. Juris. 196; Howe's App., 126 Pa. 241; Crawford's App., 61 Pa. 52; Tollet v. Tollet, 1 Leading Cases in Equity, 227; Colton v. Colton, 127 U. S. 313; Robins v. Bellas, 4 Watts, 255; Wallgrave v. Tebbs, 2 Kay & John. 313–326; Thynn v. Thynn, 1 Vernon, 296; Kingsman v. Kingsman, 2 Vernon, 559; Drakeford v. Wilks, 3 Atk. 539; Tee v. Ferris, 2 Kay & John. 357; Springett v. Jennings, L. R. 10 Eq. 488; Hoge v. Hoge, 1 Watts, 163; Church v. Ruland, 64 Pa. 434; Hoffner's Est., 161 Pa. 331; Shields v. McAuley, 37 Fed. Rep. 302; Bryn v. Godfrey, 4 Ves. 10; Wekett v. Raby, 2 Bro. P. C. 386; Paine v. Hall, 18 Ves. 475; Barrow v. Greenough, 3 Ves. 152; Brook v. Chapdell, 34 Wis. 405.

OPINION BY MR. JUSTICE GREEN, January 3, 1898:

Miss Mary McAuley was the actual and undoubted owner in fee of the property in question, in her own right alone, from the death of her sister in 1871, until and at the time of her death on January 6, 1886. As such owner she had the absolute right

to make any lawful disposition of the property she might choose, and none could question her right. She chose to make a declaration in writing respecting the property which was not valid as a will, but which if it was competently expressed as a trust, certainly, had legal efficacy to that end, because it was not in contravention of any legal or equitable rule. If, therefore, the paper expresses with a sufficient meaning an intended execution of a private trust to which she considered herself subject, we cannot understand how any other persons can be permitted to interfere for the purpose of defeating the trust, in order to get the property for themselves. The trust was a matter of her own concern, and the manner of its execution, if in all respects legal, cannot be questioned by third persons. Thus, it is a matter of no consequence whether there is proof of an affirmative character that this thing or that thing or the other thing was done or omitted to be done, unless such thing was essential to the legal efficacy of the paper to do what was sought to be done by it. Hence, as it seems to us, the only question which requires serious consideration is whether this paper is a legally adequate expression of a purpose to effectuate a trust which this lady desired to execute. Its words are as follows:

"By the request of my dear brother, my house on Duquesne Way is to be sold at my death, and the proceeds to be divided between the Home of the Friendless, and the Home for Protestant Destitute Women. (Signed) MARY McAULEY."

What do the terms of this paper import? The words are of the plainest and simplest character, and express with clearness and force that, by the request of the lady's brother, a certain property, to wit: "my house on Duquesne Way," is to be sold at her death, and that the proceeds of the sale are to be divided between two charities that are named. Each one of the following individuated topics is plainly expressed in apt words, to wit: (1) a request by her brother to her to do that which the paper purports to do; (2) a sale of the described property, the house on Duquesne Way; (3) a division of the proceeds of the sale; (4) between the Home of the Friendless and the Home for Protestant Women. It must now be remembered that this is not a proceeding against an unwilling trustee who resists the execution of the trust. On the contrary it is the case of a trustee endeavoring to execute the trust, and for that purpose

declaring in writing, signed by herself, what the trust is, and directing its execution. If this paper had been more fully and formally written out, reciting that her deceased brother, naming him, had made a will devising to her the property in question, and had requested her to direct its sale after her death, and that the proceeds be divided between the two charities, naming them, and had, thereupon, in execution of the trust so created, thereby directed the sale of the property to take place at her death, and the division of the proceeds to be made between the two charities named, it could not for a moment be questioned that this was a perfectly good execution of the trust. The purpose of execution and the reason for it would have been more minutely expressed, but that is all. The words of the paper do actually contain all the elements that would have appeared had it been fully written out as suggested. As to the request of her brother, the trustee not only admits but declares it, and declares also that the property is to be sold in consequence of the request. These are the more important ingredients of the trust, and they are fully asserted in the paper. As to the contention that there is no affirmative testimony that her brother ever communicated the request to his sister, and no proof as to when he did so, the answer is twofold, first, that it is no concern of these exceptants, and second, as she recites a request in the paper, the necessary implication is that it must have been made to her by him during his life, and that she at least considered that it was obligatory on her conscience. All the rest of the paper is too clear to require any comment. It directs the sale of the property after her decease, and the division of the proceeds between the two charities named, and the paper is thus absolutely complete in all its essentials as a perfect declaration of a specified trust. Soon after the death of Miss McAuley a litigation in the circuit court of the United States for the western district of Pennsylvania was instituted by some of the heirs who were nonresidents. It was duly proceeded with to a final decision in that court, and was terminated there by an opinion and decision of Mr. Justice ACHESON, which is reported in 37 Fed. Rep. 302. It was subsequently held by the Supreme Court of the United States that the federal courts had no jurisdiction as to the land, but they sustained the circuit court in holding that the paper signed by Miss McAuley was

good and valid as a declaration of trust. In the course of the opinion of Mr. Justice ACHESON, a very accurate and comprehensive definition of a trust arising in this mode was given in the following words: "It is a settled principle that if a testator make a devise in terms absolute, but upon a private understanding had with his devisee, whether by the latter's express promise or his assent implied from his silence, that he will apply the devised estate to some purpose designated by the testator, a trust arises which a court of equity will enforce, unless unlawful in itself." It seems to us that this is a perfectly correct description of this species of trust, and it is so broadly stated that it will embrace almost, if not quite, all the circumstances which, being proved by competent testimony, will give rise to a trust of this nature. In most of the cases the proceeding is adverse to the alleged trustee, seeking to compel him to execute a trust which he denied and contested. In all such cases the expressions by the courts were adapted to the character and state of the testimony, as bearing upon the main question as to the existence of the trust. For instance, the ordinary case is where a devise or bequest was made to one generally upon the faith of an express promise by him that he would hold or apply the subject of the trust to the use or for the benefit of some other person. Usually such trusts are sought to be established by verbal testimony to the fact of the promise, or by verbal declarations of the alleged trustee, and in all these cases the rule is stated that the evidence must be clear, precise and unequivocal; that the heir cannot be disinherited except by express words or necessary implication; that verbal wills cannot be made to pass title to real estate, and that parol trusts of title to land cannot be created unless in very peculiar and exceptional circumstances. In all these various classes of cases very cautious and well considered limitations are made by the courts upon the right to have the trust established, but in the present case those controversies do not arise, and the decisions which deal with them are not applicable.

As an illustration, the case of Irwin v. Irwin, 34 Pa. 525, is cited for the appellants with much confidence, as being in hostility with the ruling of the court below declaring the trust in this case. An examination of that case shows that there never was any written declaration of trust, but it was alleged that

Judge Irwin had by a letter, which was not produced, induced his brother Samuel to emigrate from Ireland, where he was living, to Pennsylvania, where the judge lived, promising, if he did so, he would give him the land in controversy. Samuel did remove to Pennsylvania. Judge Irwin died and left a will which did not give the land to Samuel, but did give it to his, the Judge's, son James in fee. Both Samuel and James having died, the heirs of Samuel brought an ejectment to recover the land in question, some three hundred acres, on the ground that James held it as a trustee ex maleficio for Samuel, upon a promise to his father that he would so hold it. On the trial the trust was sought to be established by proof of verbal declarations, both by Judge and James Irwin, that a letter or letters had been written to Samuel containing the promise which the plaintiffs contended should be treated as a note in writing. The next stage of proof was that Judge Irwin had made a parol gift of the land to Samuel. Much testimony, all verbal, on both these points was given, but the court below sitting as a chancellor charged the jury that the evidence was not sufficient to make out a case for specific performance; that a mere design on the part of Judge Irwin to convey the land to Samuel would not be sufficient to create a trust, but that if this design was made known to James by the judge, and if he communicated to James that Samuel should have the land when he came over from Ireland, and if James agreed to accept the devise and to carry out the trust in favor of Samuel, then he would be a trustee for Samuel, and his refusal to do so would be a wrong on Samuel which would take the case out of the statute of frauds. The charge also stated that a state of facts which would establish such a trust must be by an agreement made before the date of the will, and might be proved by parol, but must be proved by evidence which was clear, satisfactory, certain and unambiguous. Such a charge was appropriate in such a case, but the facts of that case have no analogy to the facts of this. The same line of remark is applicable to the other cases cited. Here there is a written declaration of the trust signed by the trustee, who not only does not resist the trust, but affirms it, and seeks to execute it. The only question is therefore whether the paper is a legally sufficient declaration of the trust, and we are very clear that it is. The leading cases in Pennsylvania are Hoge v. Hoge, 1 Watts, 163; Church v. Ru

land, 64 Pa. 432; Hoffner's Est., Anderson's App., 161 Pa. 331, and there are many others.

We do not think it necessary to extend the discussion.    There is no real controversy as to what the law is, and it is only important to make a correct application of the law to the actual facts which are peculiar to this case.   The proper explanatory testimony was given showing the will of James McAuley, identifying the property as having been obtained under his will, explaining what the charities were and giving their correct names.   The conclusion followed under the necessary construction to be given to the words of the paper.   There is no mystery about it, and there ought not to be any confusion as to the principles which control it.

The written declaration in question was found in a pocket book in the bottom of an old trunk of the deceased, and amongst other papers relating to the estate of Miss McAuley's deceased brother.   It bore the manifest marks of age upon it, and it was conceded on the argument that it was much older than the thirty day limit imposed by law upon charitable bequests.

The decree of the court below is affirmed, and the appeal is dismissed at the cost of the appellants, and record remitted for further proceedings.