STEWART v. VILLAGE OF ASHTABULA et al.

(Circuit Court of Appeals, Sixth Circuit. April 2, 1901.)

No. 857.

1. JUDGMENT—RES JUDICATA.

A petition in a suit to enjoin a village and others from preventing the restoration of plaintiff's street railroad, removed by defendants for plaintiff's failure to comply with the ordinance which authorized its construction and operation, was based on an alleged compliance with such ordinance, but did not pray for damages. A demurrer to the petition for want of facts was overruled, and the court found, inter alia, that the rails, ties, etc., had been removed, piled up, and held at plaintiff's order, and in conclusion found, as a matter of law, a failure to comply with the

ordinance, for which it expressly denied relief and dismissed the petition, and the decision was affirmed on appeal. *Held*, that the decree was conclusive in a subsequent action at law by plaintiff as to his right to damages for the removal, but not as to damages for the conversion of his property.

2. PARTIAL DEFENSE—PLEADING AS FULL DEFENSE UNDER OHIO CODE—DEMURRER.

While a partial defense may be pleaded under the Ohio Code, if it is attempted to be set up as a full defense it is subject to demurrer.

Severens, J., dissenting.

In Error to the Circuit Court of the United States for the Eastern Division of the Northern District of Ohio.

This action was begun in the circuit court by the filing of a petition in which the plaintiff sets out that on the night of July 19, 1890, and during the days following, the defendants wrongfully and unlawfully entered upon, tore up, destroyed, and removed a certain line of street railway belonging to the plaintiff, theretofore laid in the streets of Ashtabula; that defendants removed said line of street railway, and unlawfully and wrongfully removed the materials thereof, and in like manner converted the same to their own use; that the defendants unlawfully and forcibly prevent him from restoring the said line of railway to its former condition, keeping him from the further possession and right of occupation thereof; that the said structure and equipment of said railway, and the right and franchise of operating it, of which he was illegally deprived by the defendants, were rendered valueless to the plaintiff. By reason of the premises, he prays damages in the sum of $150,-000. To this petition, after various amendments thereof, an amended answer was filed by the village of Ashtabula, containing, among other things, what is denominated a "fourth defense." This defense, pleaded as a full defense to the action, sets out: That on or about the 19th of January, 1892, said plaintiff commenced an action in the court of common pleas in Ashtabula county, Ohio, against the defendants, and filed therein a certain amended petition, in which he sought to restrain and enjoin said defendants from preventing or interfering with him in restoring the street railway claimed to have been removed by said defendants, and also to recover damages for the wrongs and grievances alleged in said petition, and for equitable relief, to which amended petition the defendants made answer, putting in issue the averments of the petition, and alleging that plaintiff had wholly and substantially neglected to conform to any of the conditions of a certain ordinance granting to him the right to construct a street railway, and that said action, having been disposed of in the said common pleas court, was appealed afterwards to the circuit court of said county, and was there tried and determined. That it was a material and important issue in the trial of said case in the said circuit court as to whether or not said plaintiff had performed the conditions of said alleged ordinance under which he claimed the right to operate said street railway. Said action came on for trial, and was duly tried upon the issues and merits. That, before the decision of the case, plaintiff requested that the court make a special finding of law and facts. Thereupon the court found the following facts: "(1) That the ordinance, a copy of which is attached to the plaintiff's petition, was duly passed by the village of Ashtabula, and was accepted by the plaintiff, and under the grant to him therein the plaintiff constructed the railroad, which was constructed and removed from the streets where located, as hereinafter found. (2) That immediately after the passage and legal publication of said ordinance the plaintiff commenced the construction of his said railroad, and on or about the 4th day of July, 1883, commenced to operate the same and run cars thereon. (3) That the plaintiff continued to occupy said streets and operate his said railroad from that date until the 19th day of July, A. D. 1890, when it was torn up and removed from the streets of said village by the order of the village council, as herein found. (4) That prior to the construction of said railroad the grade had been established only on a part of the streets through which it was constructed, and a portion of said streets in which

a grade has been fixed were not regularly worked and kept to grade. (5) That said plaintiff did not within three months after the completion of said railroad, or at any time, place ballast of stone, broken not larger than one inch, or hard or suitable cinders, slag, or other suitable material, to the approval of the council, or otherwise, upon that part of the street occupied by this track, nor one foot outside thereof, nor any ballast of sufficient depth to make a firm and substantial roadway, but in fact the greater part of the road, for want of proper ballast, was filled with holes between the ties, and the ties were badly worn by the horses' feet in traveling over the same, and the only attempt made by the plaintiff to ballast said road was by filling some of the holes made by the horses between the ties in passing over the same. (6) That the plaintiff failed to so construct his said road, or maintain said roadbed, over the greater part thereof, as to make the top or surface of the street and his said roadbed and rails of uniform grade the one with the other, but in fact so constructed it, over the greater portion thereof, that the top of the roadbed and top of the rails were so much above or below the surface of the street as to be a serious obstruction and impediment to all desiring to drive upon or across said track. (7) That the ties originally used were principally of hemlock, and when worn out were replaced with poles or ties the greater portion of which were of too soft timber or too small to hold the spikes. (8) That in at least two wet and spongy places in said track the plaintiff placed under the tracks of said road poles and limbs, instead of ballast. (9) That the said defendants, through their proper officers, between the 1st day of January, A. D. 1884, and the 3d day of December, 1889, often requested said plaintiff to make the surface of his said roadbed and rails level with the surface of the streets, and to ballast the same so as to make a substantial roadbed, which said plaintiff wholly neglected and refused to do, and had not done at the time said defendants removed said roadbed from the streets. (10) That on the 3d day of December, 1889, said village, by its council, duly and in legal form, passed and published the ordinance entitled 'An ordinance declaring a rescission of the grant to John N. Stewart, to construct a street railroad upon certain streets,' a copy of which ordinance is attached to the defendants' answer, and a certified copy of which was personally served upon the plaintiff immediately thereafter. (11) That on Saturday evening, the 19th day of July, 1890, and on Sunday, the 20th, the defendants removed said plaintiff's railroad tracks, ties, and turntables from its streets, but doing no unnecessary damage to the same, and placed the same in piles at convenient places along the line of said streets, subject to the order of said plaintiff. (12) That the removal of said tracks from the streets, as herein found, was not in pursuance of any judicial determination of the respective rights of the parties hereto under said ordinance, but the village council and officers proceeded solely upon their own motion and judgment. (13) That the plaintiff, for a greater portion of the time after said railroad was completed, down to the 19th day of July, A. D. 1890, kept one, and, a portion of the time, two, teams at work in drawing cinders and gravel to fill up the holes made between the ties by the horses in passing over the same, as heretofore found, and in attempt to ballast said road. (14) That the plaintiff has expended a large amount of money in the construction and equipment of his said street railway, and for barns and horses, the exact amount of which the court is not able to find from the evidence; but the court finds that the plaintiff expended for the same not to exceed fifty thousand dollars, and not less than fifteen thousand dollars, and that all of said property, except the barns and horses, will be substantially worthless to the plaintiff unless he is permitted to restore said street railway. (15) The court finds that none of the streets upon which said railway was built were paved, but were ordinary dirt roads or streets, upon clay soil, which in wet weather became soft, and, in consequence of a large amount of travel over the same, became deep, and in places almost impassable for loaded teams at times of long-continued wet weather, and at such time and places that what there was of ballast at the end of the ties would work out into the streets." The following are the findings of law: "From the foregoing facts so found, the court finds that the plaintiff has failed to perform the conditions of the said ordinance in the several respects mentioned, and that therefore he is not entitled to the relief for which he

prays." Thereupon the plaintiff's petition was dismissed, and the plaintiff ordered to pay the costs in the case.

Copy of the record in the case in the circuit court is attached to the fourth defense of the answer, and made an exhibit and part thereof. It is further averred that the decision of the circuit court was affirmed in the supreme court. 48 N. E. 1118. A copy of the decision in the supreme court affirming the judgment in the circuit court is attached to the answer. The claim is made that the record of said proceedings in said circuit court thus affirmed in the supreme court discloses a complete bar to any right of action on part of plaintiff. Copies of the ordinance attached show the authority to Stewart to construct, maintain, and operate the street railway in question. It is therein provided, among other things, that the rails should be laid in such manner as to be no impediment to ordinary travel, and so as to protect the public, in the free use and enjoyment of said streets, against the inconvenience and nuisance of having the rails and ties above the surface of the roadway; that within three months after completion of same it should be ballasted with stone not larger than one inch, or hard and suitable cinders, slag, or other suitable material, upon all that part of the street which is occupied by the tracks of said railway, and also for one foot outside of the rails of said tracks, and such ballast to be of sufficient depth and so placed as to make a firm and substantial roadway, and of the same grade as the top of the roadway. Article 7 provides: "In case of the neglect or refusal on the part of said Stewart, his heirs or assigns, to take up and relay said track when directed so to do by said council, for the reasons and purposes named in this ordinance, to ballast said road as herein provided, or keep the same so ballasted, and in good repair, to restore the street or track to a uniform grade, and surface, the one with the other, or to pave and repave the same, as provided in the ordinance, then, and in any such case, said council may cause the same to be done at the expense of said Stewart, his heirs and assigns, or, if in their opinion expedient, have the track removed from the streets." Section 14 provides: "That John N. Stewart, his heirs and assigns, shall perform all and singular the conditions of this ordinance, together with all and singular, the further and future orders of the council, as herein provided, and it is expressly understood as a condition of this grant, that if John N. Stewart, his heirs or assigns, shall neglect or refuse to perform upon their part, as hereinbefore set forth, this grant shall, by that neglect or refusal, be rescinded. This ordinance becomes null and void upon the passage of an ordinance by the council of the village to that effect." Afterwards the village council, upon the alleged violation of the conditions of the ordinance aforesaid, as appears in an exhibit attached to the answer, passed an ordinance rescinding Stewart's right to construct and maintain a railroad; reciting his failure to keep the terms of the former ordinance by keeping the streets ballasted and in good repair, and the track upon uniform grade; declaring the purpose of the village to rescind the former grant and annul the rights and privileges theretofore granted to Stewart; and directing that the same be removed from the streets of the village. From the certified copy of the record attached to this ground of defense, it appears that the petition, after reciting the grant of rights and privileges under said ordinance, and the failure of the village to comply with the statute of the state, and to put and maintain the streets at a proper grade, and put and keep the same in good condition and repair, and plaintiff's compliance with the ordinance, avers that on the night of July 19, 1890, the village unlawfully and forcibly stopped the passage of cars, removed rails, tore up the ties, material, etc., and unlawfully converted the same to its own use, thereby preventing the said plaintiff from occupying and using said railroad, as he had a right to do. After other allegations tending to show plaintiff's right to the use of the streets for the purpose aforesaid, and the forcible prevention on the part of the village of plaintiff's attempts to restore his railway and reoccupy the streets, the petition concluded with this prayer: "The plaintiff therefore prays the court to grant its injunction restraining the said village and its council and the said defendants from preventing the plaintiff, and from interfering to prevent the plaintiff, or any person under his employment, from restoring said railway and said track between the termini of said road to suitable condition for its use for the carry-

ing of passengers thereon, and that the defendants be enjoined from in any wise interfering with any proper steps or action taken by said plaintiff to restore said roadway to the condition required by the ordinance aforesaid, and from interfering with the said plaintiff in the operation of said road in conformity with the terms prescribed by said ordinance granting him the right to construct and operate the same, and for such other and further relief as to equity may seem meet." The transcript shows that in the court of common pleas the defendant demurred to the plaintiff's petition upon several grounds: (1) Said petition does not constitute a cause of action; (2) it appears from the petition that plaintiff has adequate remedy at law; (3) the petition does not state facts sufficient to entitle the plaintiff to the relief prayed for. The demurrer was sustained in that court, and appeal was taken to the circuit court. In the circuit court, upon demurrer, the petition was adjudged good. Thereafter an answer was filed setting up the violations of the ordinance granting the right to Stewart; the rescinding ordinance; the subsequent tearing up and removing of the tracks from the streets. Reply was filed, and the case went to trial, resulting in the finding of facts in the circuit court as heretofore stated. A demurrer having been interposed to the fourth defense, the court below overruled the same, and thereupon, the plaintiff not asking to plead further, final judgment was rendered in favor of defendant. 98 Fed. 516. This proceeding seeks the reversal of that ruling and judgment.

Morrison R. Waite, for plaintiff in error.

James H. McGiffert and J. M. Jones, for defendants in error.

Before LURTON, DAY, and SEVERENS, Circuit Judges.

DAY, Circuit Judge, after stating the foregoing facts, delivered the opinion of the court.

The question here presented is as to the effect of the record and proceedings in the state circuit court, as affirmed by the supreme court (48 N. E. 1118), as an estoppel between the parties. It is evident that the principal contention in the state court concerned the issue as to whether Stewart had complied with the terms and conditions of the ordinance granting to him the right and privilege of using the streets of the village of Ashtabula for the construction and maintenance of a street railroad; the contention of the village being that Stewart had, by reason of his failure to comply with the terms of the granting ordinance, forfeited his rights thereunder; that, as a result, provided for within the terms of the ordinance, the village was justified in removing the tracks, ties, etc., which it was the purpose of Stewart's action in the state court to establish his right to restore, and prevent the village from interfering with him in the exercise of that right. The state circuit court, having overruled a demurrer which was predicated, among other grounds, upon the claim that the plaintiff had an adequate remedy at law, proceeded to hear and determine the matters of fact at issue between the parties, and found that the claim of the village was established upon the issues made; that Stewart had, by failure to comply with the terms of the grant, forfeited his rights in the streets, and consequently the village had the right to pass the rescinding ordinance, and remove from the streets the tracks and ties, which Stewart no longer had a right to maintain there. An examination of the petition in the case now under review shows the principal ground of the complaint to be the wrongful tearing up and removal of the tracks and superstructure of the railroad. It is claimed that the

judgment of the state circuit court was made upon facts essential to Stewart's right to recover in the present case. On the other hand, it is claimed that the former adjudication is no bar to the present proceeding, because that was a case in equity, and this is an action at law; that no more is shown by the record in the former case than that the court found there was no remedy by injunction, and the petition may have been dismissed because of want of equity, and, as estoppels must be certain, there is nothing to prevent plaintiff from prosecuting an action at law for the alleged breach of his rights. We cannot agree to this claim. The record attached to the answer makes it apparent that the state court, in overruling the demurrer, held that the allegations in the petition, if true, entitled plaintiff to the injunction sought. Under the Ohio practice (section 6710, Rev. St. Ohio) it is provided:

"A judgment rendered, or final order made, by the circuit court, any court of common pleas, probate court, or the superior court of any city or county, may be reversed, vacated or modified by the supreme court, on petition in error, for errors appearing on the record; but no petition in error in such cases, except as to the judgment or final order of the circuit court, or of the general term of the superior court of Cincinnati, shall be filed without leave of the supreme court, or a judge thereof, and the supreme court shall not, in any civil cause or proceeding, except when its jurisdiction is original, be required to determine as to the weight of the evidence; and on application of any party, excepting to a ruling or decision of the circuit court during the trial, or on motion for a new trial, such court shall find from the evidence, and state on the record, the facts upon which the alleged error arises, or which may be material in determining whether error has intervened or not."

It was in pursuance of this provision, upon request of Stewart, that the facts were specially found. If these facts were essential to the judgment rendered, and are also essential to the maintenance of the plaintiff's action in this case, we are of opinion that they cannot again be put in controversy. Facts essential to the maintenance of a cause of action, which have been adjudicated in a court of competent jurisdiction, upon issues duly made, are held to be finally established between the parties in accordance with the decision thus made. The finding that Stewart had failed to comply with the terms of the ordinance was essential to the rendition of the decree in the state court, and was made the basis of the decree dismissing his petition. Under the Ohio statute above quoted, facts are found for the purpose of presenting to the supreme court (which does not review controverted questions of fact) the question of the correctness of the judgment of the inferior court upon the facts found. By affirming the decision of the circuit court as was done in this case, the supreme court finds no error in the conclusions of law upon the facts found, and the judgment remains intact. We are cited, in support of the claim that the state circuit court decision is not final, to the cases of Cramer v. Moore, 36 Ohio St. 347, and Porter v. Wagner, Id. 471. In the former case it was held that in an action on a promissory note the maker is not estopped from setting up want of consideration or fraud by a judgment dismissing his petition on the merits in an action brought to enjoin the negotiation of the note, and to obtain its surrender and cancellation, although the matter set up as a defense was the ground relied upon in the former petition. Judge White, who delivered the

opinion, stated that the only effect of the dismissal of the action in equity was to declare that there was no equitable right to maintain the same. In the case of Porter v. Wagner it was held that the judgment of dismissal of a petition for the specific performance of an agreement, and of a counterclaim asking a rescission of the same, is no bar to an action for the recovery of money paid on the agreement, although the cause of action accrued before the rendition of the judgment. The third syllabus in that case reads:

"A judgment is conclusive by way of estoppel only as to facts without the proof or the admission of which it could not have been rendered."

In the Cramer Case the court puts the decision upon the ground that the former equity proceedings may have been dismissed because of want of equity. The statement of the rule in the Porter Case that a judgment is conclusive only as to facts without the proof or admission of which it cannot be rendered is undoubtedly a correct statement of the law. It is equally true, and a necessary corollary of this proposition, that, when facts have been found essential to the determination of the issues, parties are estopped from relitigating the same. This doctrine is recognized in the late case of Hixson v. Ogg, 53 Ohio St. 361, 42 N. E. 32. The syllabus of that case is:

"Where issue has been joined on a material fact in an action, and the issue judicially determined and carried into judgment by a court having jurisdiction of the action, the parties to such action are concluded by such finding until the judgment is reversed or set aside. And the facts thus established cannot be retried by the same parties in any subsequent action, whether the second action is upon the same or a different subject-matter from the first. In this respect it is immaterial that one of the actions may have been ex contractu, and the other ex delicto."

In delivering the opinion the judge quotes, with approval, the following rule from Bigelow, Estop. 99:

"A matter of fact * * * once adjudicated by a court of competent jurisdiction, concurrent or exclusive, however erroneous the adjudication, may be relied upon as an estoppel in any subsequent collateral suit in the same or any other court: * * * and this, too, whether the subsequent suit is upon the same or a different cause of action."

The learned judge states the general rule to be:

"That an issue once tried, decided, and carried into judgment works an estoppel, and cannot be relitigated by the same parties in a subsequent action, though the subjects of the two actions are different."

The facts in Hixson v. Ogg—not necessary to detail here—make the case a striking illustration of this rule. This case has been cited with approval by the supreme court of Ohio in City of Cincinnati v. Emerson, 57 Ohio St. 139, 48 N. E. 667. In that case the rule is stated in the following terms:

"The estoppel invoked in the case of Hixson v. Ogg, 53 Ohio St. 361, 42 N. E. 32, rests upon the principle that where two parties have in fact joined issue upon some particular matter in a court clothed with jurisdiction over such matter, and over the persons of the contending parties, and has decided the matter and carried its decision into judgment, such matter must thereafter, as long as the judgment remains in force, be deemed to be at rest as between such parties and their privies. To hold otherwise would be to open an endless avenue to contention, contrary to the mandates of that enlightened public policy which seeks to secure the repose of the community by adopting rules on this subject that will prevent interminable or vexatious prolongation

of private contention in the courts of the country, even if the parties thereto were willing to maintain it."

These decisions are in accordance with the doctrine upon the subject as laid down in the supreme court of the United States. The cases in that court upon the effect of former adjudications as estoppels are reviewed at great length in the opinion of Mr. Justice Harlan in Southern Pac. Ry. Co. v. U. S., 168 U. S. 1, 18 Sup. Ct. 18, 42 L. Ed. 355. In this connection the rule is thus stated by the justice:

"The general principle announced in numerous cases is that a right, question, or fact distinctly put in issue and directly determined by a court of competent jurisdiction as a ground of recovery cannot be disputed in a subsequent suit between the same parties or their privies; and, even if the second suit is for a different cause of action, the right, question, or fact once so determined must, as between the same parties or their privies, be taken as conclusively established, so long as the judgment in the first suit remains unmodified. This general rule is demanded by the very object for which civil courts have been established, which is to secure the peace and repose of society by the settlement of matters capable of judicial determination. Its enforcement is essential to the maintenance of social order; for the aid of judicial tribunals would not be invoked for the vindication of rights of person and property, if, as between parties and their privies, conclusiveness did not attend the judgments of such tribunals in respect of all matters properly put in issue and actually determined by them."

Had the state circuit court made no findings of fact, we should have had no question, upon this record, that the right of the village of Ashtabula to remove the street railway of the plaintiff from its streets was distinctly put in issue and necessarily decided against the claim of Stewart in that suit. His petition seeks, in this case, to recover, in the main, upon the claim of the wrongful removal of his railway and interference with his rights and franchises by the village, —the very things which were decided against his present contention, as appears by the allegations of the fourth defense, and the record attached thereto, and admitted by the demurrer to be true. We think there has been and is shown to be a full adjudication of the rights of the parties upon the allegations of the plaintiff's petition concerning the wrongful interference with his rights by the removal of his railway from the streets of the village. On this branch of the case, Judge SEVERENS is of the opinion that there is no estoppel by the judgment of the state circuit court, for the reason that it is not certain that the supreme court of Ohio may not have rested its judgment upon the ground that the plaintiff had not the equitable rights set up in his petition; and, for aught that appears, judgment of that court may have passed only upon the insufficiency of those facts to entitle him to relief in equity. A majority of the court are of opinion, however, that the facts essential to a recovery in this aspect of the case were distinctly in issue in the state circuit court, and that the finding is conclusive until the judgment is reversed or set aside. Hixson v. Ogg, 53 Ohio St. 361, 42 N. E. 32; City of Cincinnati v. Emerson, 57 Ohio St. 139, 48 N. E. 667; Southern Pac. Ry. Co. v. U. S., 168 U. S. 1, 18 Sup. Ct. 18, 42 L. Ed. 355.

The claim is made (and it presents a question of more difficulty) that in the present case damages are sought not only for the wrongful removal of the railway, etc., from the streets, but because of the

alleged conversion of the same to the use of the village. Was this right of recovery, if it exists, adjudicated in the former action? An examination of the petition and record attached to the fourth defense shows that, while it stated the wrongful conversion of plaintiff's property, it was in equity to restrain the village from interfering with the restoration of the railway by the plaintiff. There was no statement of the amount of damages, or prayer for damages, therein contained. In states having Codes like Ohio, which permit the joining of causes of action of a legal and equitable nature, it may be that the cause of action for damages might have been united with the equitable demand. Pomeroy, in his valuable work on Remedies and Remedial Rights, states the rule as follows (section 78):

"When the plaintiff is clothed with primary rights, both legal and equitable, growing out of the same cause of action or the same transaction, and is entitled to an equitable remedy, and also to a further legal remedy, based upon the supposition that the equitable relief is granted, and he sets forth in his complaint or petition the facts which support each class of rights, and which show that he is entitled to each kind of remedy, and demands a judgment awarding both species of relief, the action will be sustained to its full extent in the form thus adopted. He may, on the trial, prove all the facts averred, and the court will, in its judgment, formally grant both the equitable and the legal relief."

In the present case no prayer for damages was made in the petition and no demand was made for judgment, "awarding both species of relief." In Ohio it is determined, in the case of Converse v. Hawkins, 31 Ohio St. 209, that in an action in the nature of a bill in equity for an injunction, and incidentally for an accounting, but one cause of action is stated, and the court says, "The right of the plaintiff to an account in the action depended on his right to an injunction." Under the peculiar jurisprudence of Ohio, equity cases are appealable, while cases for specific relief, by way of a recovery of money or property, are triable by jury, and reviewed by petition in error. Undoubtedly, under the Ohio practice, had the court found that Stewart was entitled to an injunction, an account might have been taken as to the damages sustained, upon the principle that the court, having acquired jurisdiction for one purpose, will retain it to grant full relief. But in the case in the state court the petition was dismissed because of Stewart's forfeiture of his rights as found by the court, and, of course, no account, had one been prayed, could have been taken. Its conclusion of law is that the facts found show that plaintiff has failed to comply with the ordinance, and consequently has no further rights in the streets. It is true that the circuit court, in its findings of fact, finds that the rails, ties, etc., were removed, piled up, and held at the order of the plaintiff. Of course, it did not deny the injunction upon this ground. This could only have been material had the court passed to the consideration of the question of damages, having first found in favor of Stewart's claim, and enjoined the village from interfering with his possession of the tracks in the streets. There is nothing inconsistent with the right of the village to remove the tracks, ties, etc., from the streets, because of the forfeiture of the rights under the ordinance, and a demand by Stewart for the conversion of his property, if it is true that the village not only removed the same, but con-

107 F.—55

verted it to its own use. The right to remove from the streets, it need hardly be stated, would not justify the conversion of plaintiff's property. Upon the petition in the state court, and the decree as made therein, it was not essential to the determination of the rights of the parties that the facts in this regard should be passed upon; nor can we regard the finding of facts as to this disposition of the property as one of those essential conclusions which would thereafter estop the parties from litigating the same. This view does not deprive the defendant of the right to a defense upon the plea of former adjudication, so far as the present claim to recover is based upon the alleged wrongful termination of Stewart's rights in the street, and the removal of his property therefrom. Under the Code a partial defense may be pleaded. The rule is thus stated by Pomeroy in Remedies and Remedial Rights under the Code (section 607):

"It was an inflexible rule, under the common-law system, that every plea in bar must go to the whole cause of action, and must be an entire answer thereto on the record. With pleas in abatement the rule was different, for they did not purport to answer the cause of action. The spreading of a partial defense upon the record was unknown. Whenever such defenses were to be relied upon,—as, for example, mitigating circumstances,—they were either proved under the general issue, or under a special plea setting up a complete defense, which the pleader knew did not exist. The Code has certainly abolished this doctrine and the practice based upon it. Several features of the new procedure are utterly inconsistent with it. In the first place, the general or special denials of the Code are not so broad as the general issues of the common law most in use had become; and, as will be particularly shown in the following section, they admit of no evidence not in direct answer to plaintiff's allegations. In the second place, the verification of pleadings introduced by the Codes cuts off all averment of fictitious defenses. In the third place, the statute expressly authorizes the defendant to set forth 'as many defenses as he may have'; and this has been very properly construed as a direct permission, and even requirement, to plead partial as well as complete defenses."

How is a party to avail himself of this partial defense? Pomeroy answers this question, in section 608, as follows:

"While partial defenses are to be pleaded, it is well settled that they must be pleaded as such. If a defense is set up as an answer to the whole cause of action, while it is in fact only a partial one, and even though it would be admissible as such if properly stated on the record, it will be bad on demurrer. The facts alleged will not constitute a 'defense,' which word, when thus used alone, imports a complete defense. The practical result of this doctrine is simply that the pleader must be careful to designate the defense as partial. He must not content himself with simply averring the facts as in an ordinary case, as if they constituted a full answer to the cause of action, but he must expressly state that the defense is partial. In the absence of such statement, it will be assumed that he intended the defense to be complete."

The same rule is recognized in Ohio. Peebles' Ex'rs v. Isaminger, 18 Ohio St. 490. The rule seems to be established that, while a partial defense may be pleaded under the Code, it must be pleaded as such, and that, if an attempt is made to set up a partial as a full defense, it is subject to demurrer. We think the present case resolves itself into that situation. Upon the petition filed in this case, if Stewart could establish that his property had been wrongfully converted to the use of the village, although properly removed from the

streets, wherein the adjudication shows he has lost his franchise and rights, he might, to that extent, have a legitimate cause of action, not concluded by the former record. The former adjudication is complete, except as to this limited right of recovery for the alleged wrongful conversion, after removal, of plaintiff's property. The defense was pleaded as a full and complete defense. Had it been properly limited as a partial defense, the demurrer should have been overruled. As it was, it should have been sustained. We are therefore of opinion that the order overruling the demurrer and rendering final judgment against plaintiff should be reversed, and the cause remanded, with instructions to permit the defendant to plead in bar the former adjudication as a partial defense, in accordance with the conclusions herein stated, leaving the action to proceed upon the allegations of the petition that the village, after having removed plaintiff's property from the streets, wrongfully appropriated it to its own use.