BUCHWALTER, J.
These preceeclings in error were brought to reverse a judgment entered in the superior court of Cincinnati in an action wherein John Robinson was plaintiff and Harry G. Lamkin, both as executor of Pearl R. Lamkin and individually, and certain corporations were defendants.
The corporations named as defendants are not interested in the cause, except for the purpose of transferring the shares of stock in controversy as the court may order.
John F. Robinson will hereinafter be designated as plaintiff and Harry G. Lamkin as defendant.
While the action was pending plaintiff died and the cause was revived in the name of his executor.
Defendant was the husband of Pearl R. Lamkin, who was a daughter of plaintiff, and so far as the said shares of stock are concerned was the sole beneficiary under her will.
The shares of stock in the defendant companies, which are the subject matter of this litigation, stand on the books of said companies in the name of Pearl R. Lamkin.
Plaintiff claims the ownership of said stock by reason of a written agreement executed by Pearl R. Lamkin on March 3, 1905.
This agreement was executed in five copies, in the presence of witnesses, one copy being filed with each of the various defendant companies.
The action was for specific performance of said written agreement, and to compel the defendant companies to accept the surrender of the certificates issued in the name of Pearl R. Lam-kin, and to issue new certificates to said plaintiff.
The defendant by answer avers that the contract was execu *769 tory and without consideration, was the result of undue influence exerted by the father, while said Pearl R. Lamkin was a member of his household, and without any independent advice.
That the gift, to take effect after her death, was testamentary in character; hence, void as not being executed in accordance with the laws governing wills, and, by the way of cross-petition, asks that specific performance be denied, that he be declared the owner of said certificates, subject, however, to the plaintiff’s right to the dividends thereon during his life.
The ownership of the said shares of stock and the dividends thereon, - accruing since the death of Pearl R. Lamkin, depend upon the validity of Sec. 4 of the instrument, executed March 3, 1905.
If that section is valid, said shares became the property of plaintiff at the time of the death of Pearl R. Lamkin; if invalid, they passed under her will to the defendant, subject, however, to plaintiff’s right to the dividends during his life.
The instrument is as follows:
“Whereas, I am the owner of'certain stocks, to-wit, five hundred and eight (508) shares of the capital stock of The United States Playing Card Company, evidenced by Certificate No. —; “Now eight hundred and three and three-fourths (803%) shares of the capital stock of the United States Printing Company, evidenced by Certificate No.-: and fifty (50) shares of the W. B. Oglesby Paper Company evidenced by Certificate No.-; now, this agreement is to show:
“That for and in consideration of one dollar and other good and valuable consideration to me paid, the receipt where of is hereby acknowledged;
“1. The said John F. Robinson is to have and retain possession of said shares of stock for and during the term of his natural life and collect the dividends thereon and apply them to his own use and he shall never be called upon to account for them to me or my executors or administrators.
“2. He is to vote the said stock at any and all elections of the said companies, respectively; and for this purpose I hereby authorize him, the said John F. Robinson as my true and lawful attorney, with power of substitution and revocation for me and in my name to vote at any and all meeting ohineetings of stockholders of said companies with all the pr%ers I should have if personally present.
*770 “3. That with my consent and approval, when in his judgment it is advisable to do so, to sell the said stock and reinvest the proceeds of sale.
“4. In the event of my dying before he does, leaving no issue of my body, then the said trust shall lapse and the said stock is to revert to him; and to carry out this condition I hereby authorize and empower the said United States Playing Card Company and The United States Printing Company, and The U. B. Oglesby Paper Company, and the respective officers of each to transfer the said shares of stock so transferred to me to the said John F. Robinson at his request.
“5. Should I die before my father, leaving issue, his rights hereunder shall continue and at his death the said stock is to become the property of my children or their descendants.
‘16. Should my father die before I do then the said stock is to come into my possession again and become fully my property.
“7. This agreement is to be in effect during the life of my said father — subject, of course, to our right to change the terms at any time we may agree to do so.
“In Testimony Whereof, I have hereunto set my hand in quintriplicate — one copy for myself, one for John F. Robinson, ■and one for each of the said companies, this third day of March, A. D., 1905.
Pearl R. Lamkin.
“Witnesses:
“R. C. Belt,
“John F. Robinson."
The original investment was made by plaintiff who became one of the partners of Russell & Morgan. Later, to wit, in December, 1883, the partners formed a corporation known as the Russell & Morgan Company. At the time of the incorporation, the plaintiff received ninety-nine shares of stock of the par value of $1,000 each in the new company. In 1884 the plaintiff transferred ninety-five (95) shares of this stock to his wife Caroline F. Robinson, in order to protect his family in the event of misfortune, with the understanding that she would make a will returning it to him, in case he survived her.
During the years that she held this stock, the plaintiff received and used the dividends in the same manner as he had prior to tnc,itransfer.
Caroline ±7» .Robinson died suddenly in 1899, without mak *771 •ing a will, leaving her husband, the plaintiff, and four minor children surviving her.
Plaintiff’s brother was appointed administrator of the estate and plaintiff was appointed guardian of his four children. The shares were inventoried and appraised as the property of Caroline F. Eobinson. Plaintiff did not claim his- one-third interest but received the dividends, used them and all of the ■ children gave receipts in full to him therefor when they became pf age. The certificates of stock were transferred to their names at this time, although plaintiff retained the certificates.
The daughters, Caroline and Pearl were then each the holders of 23% shares of stock in the Eussell & Morgan Printing Company. In 1894, the United States Printing Company bought out the Eussell & Morgan Printing Company and Pearl Eobinson received 853% shares of stock in the new company. Later, a part of the business of the United States Printing Company was acquired by the United States Playing Card Company, and 508 shares of the stock of the last named company were issued to her. By subsequent exchange of 50 shares of the stock of the United States Printing Company, she received 50 shares of stock in the W. B. Oglesby Paper Company.
In 1915, the United States Printing Company formed a consolidation with other companies, and in lieu of the 803% shares remaining in the United States Printing Company, there was issued to Pearl E. Lamkin, under the name of Pearl Eobinson 522 — 43-100 shares of first preferred stock and 281 — 31-100 shares of the second preferred stock of the United States Printing & Lithographing Company. The petition alleges 381 31-100 shares of second preferred, and the briefs and decree below also state that number, but from the evidence that is apparently an error.
Plaintiff continued to take and use the dividends until Caroline, one of the daughters, desired in 1901 to marry one Horace Stevens, contrary to plaintiff’s wish, and she transferred to plaintiff her shares of said stock. In 1903 plaintiff transferred these shares to her name, at the time when she signed an agreement similar to the one signed by her sister, *772 Pearl, March 3, 1905, except that it did not include the Oglesby stock.
• On March 1, 1905, Pearl married the defendant, without her father’s knowledge or consent, and returned home the same day, and her husband returned to Columbus, where he was employed.
On March 3, 1905, Pearl signed a receipt, acknowledging settlement in full of all accounts between her father and herself and mentioning particularly moneys collected by him as dividends on the said stocks and also signed the instrument hereinbefore set forth; at the same time she executed a will embodying the same provisions.
In 1908 the plaintiff married a second time, and Pearl, after notifying the various companies that she claimed the dividends, brought suit against the plaintiff to set aside the agreement of March 3, 1905.
Her sister filed a similar suit and the cases were heard together in the common pleas, circuit and Supreme Courts.
In 1918, Pearl Lamkin died, leaving no children surviving her.
This action was then brought by plaintiff to enforce the agreement above set forth and secure the unconditional ownership of the shares of stock in question.
The only question involved is the validity of section 4.
One of the errors complained of is that the trial court did not consider any evidence introduced tending to show undue influence, fraud or lack of consideration, on the theory that these matters had been passed upon in Lamkin v. Robinson, no op., 88 Ohio St. 603, and were, therefore, res adjudieata as to the entire instrument.
After the decision was announced, and before the finding of law and fact, requested by defendant, had been formulated by the court, defendant offered an affidavit and certain exhibits as to the manner in which the new stock was issued by the United States Printing & Lithographing Co. and as to the taking up by Pearl Lamkin of certain subscription rights for additional stock in the United States Playing Card Co., and, by motion, asked *773 for leave to file an amendment to Ms second answer and cross petition, settmg np these facts. This motion was overruled.
The new stock issued by the United States Printing & Lithographing Co. was a substitution for other stock which by item 3 of the agreement could be substituted by consent. The original certificate was issued in the name of Pearl Eobinson and her consent was necessary to make the exchange. There can be no question but that this stock would be bound by the instrument of March 3, 1905, and the answer of defendant practically admits it. Nor do we see how the fact that Pearl Lamkin subscribed to the additional shares of the United States Playing Card Co. can affect this issue.
She was a stockholder of record; the option to subscribe was given to all stockholders of record. It was not a dividend declared .on stock already issued, and, hence plaintiff had no rights therein. Pie was familiar with the transaction, assisted in carrying it out by acting for her under power of attorney. This was not an abandonment of the agreement of March 3, 1905.
These matters as well as other evidence is reference to want of consideration, undue influence, etc. would be material if these issues were not prejudged by the prior decision. If these questions are res adjudicates, the consideration of this evidence was properly excluded by the trial court.
In the original action of Lamkin v. Robinson, it was prayed that the agreement be set aside. The answer and cross petition asked that it be upheld and enforced.
It is true the opinion of the circuit court states:
“It is claimed that item 4 of the said agreement is testamentary in character and void for absence or inadequacy of consideration. As said item has nothing to do with the questions in this case, and can have no effect until the death of the plaintiffs, we have deemed it unnecessary to consider the validity of item 4, and the decree may so recite. ’ ’
But the decree contains the'following:
‘ ‘ The court finds that the defendant is entitled for the term of Ms life to the dividends upon the stocks in controversy in this case and set forth in the petition herein, together with the other rights given him by the instrument in writing of March 3, 1905, set forth in the petition, which instrument the court finds to be *774 valid and subsisting except the right of survivorship provided in item 4 thereof, which the court finds it unnecessary to pass upon and does not do so. * * * Wherefore it is considered, adjudged and decreed that the defendant have and he is hereby awarded the right to draw the dividends on said stock during his life and the other rights specified in said instrument of March 3, 1905, except the right of survivorship, which is not decided as aforesaid. * * * And that subject to the provisions of said instrument of March 3, 1905, the plaintiff (Pearl R. Lam-kin) is the owner of said stock.”
It was the decree and not the opinion of the court which was affirmed by the Supreme Court.
It has been vigorously contended that by that decree the court merely refused to exercise its equitable powers and set aside the contract and therefore left the parties as they were except as to dividends, and that when the dividends were allowed to Eobinson, it was because of the long acquiescence by the daughter to this arrangement.
But the issues of lack of consideration, duress, etc., were fully presented, the common pleas court found the instrument void for lack of consideration, and on appeal the circuit court declared it a “valid and subsisting agreement,” and the opinion states:
“These agreements so far as they related to the dividends, did not change the situation of the parties. They simply created in the defendant, as a legal right, that which he had been exercising by the consent and acquiescence of plaintiffs since they became of age.”
It is further claimed that’the court held there were various separate agreements embodied in the one instrument, because the Circuit Court mentioned agreements. It must be remembered that there were two eases presented at the same time, one by Caroline Stevens, and one by Pearl Lamldn, and the word agreements in the decision evidently refers to the two instruments, one signed by each.
Many cases are cited by counsel for plaintiff in error to the effect that the dismissal of Pearl E. Lamkin’s petition to set aside the contract of March 3, 1905, was for want of equity and *775 conferred no rights on Robinson, as the judgment was rendered on his cross petition.
The principal cases relied on being Cramer v. Moore, 36 Ohio St. 347, and Porter v. Wagner, 36 Ohio St. 471.
The case of Cramer v. Moore was one in which the plaintiff had no right to maintain the equitable action, and it was dismissed ; hence, he was entitled to put the same questions in issue in defense in an action at law. In other words, he was simply left to his remedy at law. The court says at page 349 :
“¥e do not question the principle insisted upon on behalf of the defendant in error, Moore, that a judgment of a court of competent jurisdiction, upon a question necessarily involved in a suit, is conclusive in a subsequent suit between the same parties, depending on the same question; and in respect to this quality of conclusive effect upon parties and privies, the decrees of courts of equity, upon matters within their jurisdiction, stand upon the same footing with judgments at law. ’ ’
In Porter v. Wagner, the court refused equitable relief and left the parties to pursue their legal rights.
These cases were both decided on the principle that if equitable relief is denied, either because there was an adequate remedy at law, or because no case was made out for distinctly equitable relief and the court leaves the parties to their rights at law, there is no estoppel.
The case of Porter v. Wagner and Cramer v. Moore, supra, are both considered and construed as above in Steward v. Ashtabula, 98 Fed. 516 at 519, and Stewart v. Ashtabula, 107 Fed. 857. In the last named case, Judge Day, at page 863 says:
“In the Cramer ease the court puts the decision upon the ground that the former equity proceedings may have been dismissed because of want of equity. The statement of the rule in the Porter case that a judgment is conclusive only as to facts without the proof or admission of which it cannot be rendered, is undoubtedly a correct statement of the law. It is equally true, and a necessary corollary of this proposition, that when facts have been found essential to the determination of the issues, parties are estopped from relitigating the same. ’ ’
The rule has been established since the time of the case of *776 Rex v. Duchess of Kingston, 20 Howell’s State Trials, 355, that, a judgment of a court of concurrent jurisdiction, directly upon the point, is, as a plea, a bar or as evidence, conclusive between the same parties, upon the same matter, directly in question in another court.
In Hixon v. Ogg, 53 Ohio St. 361 [42 N. E. 32], the syllabus is:
“Where issue has been joined on a material fact in an action, and the issue judicially determined and carried into judgment by a court having jurisdiction of the action, the parties to such action are concluded by such finding until the judgment is reversed or set aside. And the fact thus established cannot be retried by the same parties in any subsequent action, whether the second action is upon the same or a different subject-matter from the first. In this respect it is immaterial that one of the actions may have been ex contractu and the other ex delicto.”
In Southern Pacific Ry. v. United States, 168 U. S. 1 [42 L. Ed. 355], Justice Harlan says:
“A right, question or fact distinctly put in issue and directly determined by a court of competent jurisdiction as a ground of recovery, cannot be disputed in a subsequent suit between the parties or their privies; and even if the second suit is for a different cause of action the right, question or fact once so determined, must, as between the same parties or their privies, be taken as conclusively established so long as the judgment in the first suit remains unmodified.”
In the case of Lamkin v. Robinson, 88 Ohio St. 603 the action was to set aside the instrument of March 3, 1905, to recover possession of the stock and also the dividends collected by said Eobinson, and dividends which had accrued subsequent to the bringing of the suit. She alleged fraud, undue influence, lack of knowledge and no consideration. Eobinson, by answer and cross petition, denied all the 'allegations of fraud, undue influence, lack of knowledge and lack of consideration, and prayed for an order adjudging said agreement valid, and directing that he be entitled to possession of the stock during his lifetime, and absolutely if his daughter died before him, without issue.
*777 All matters not admitted by tbe petition were denied in the reply.
The court of common pleas, Lamkin v. Robinson, 21 Dec. 13 (10 N. S. 1), by its decree awarded to Pearl R. Lamkin the dividends which had accrued since she revoked her said father’s authority at the time of bringing her suit, and declared the instrument of March 3, 1905, was invalid, because executed without consideration, and ordered it set aside and held for naught.
When heard on appeal in the circuit court, Lamkin v. Robinson, 34 O. C. C. 91 (15 N. S. 126), that court found by its decree that said Robinson was “entitled for the term of his life to the dividends upon the stocks in controversy * .* * together with the other rights given him by the instrument in writing of March 3, 1905, * * * which instrument the court finds valid and subsisting, except the right of survivorship provided for in item 4, which the court finds it unnecessary to pass upon and does not do so.” This decree, affirmed by the Supreme Court, not only gave Robinson the right to collect and use the dividends, but also the right to keep possession of the stock certificates, to vote said stock, and to act as attorney for Pearl R. Lamkin in reference thereto. As the dividends were in the hands of a trustee pending the litigation, it was necessary for the court to decide to whom they belonged, and the rights of the parties were there determined.
, Alleged fraud, undue influence, lack of knowledge and of consideration as to the entire instrument were issues raised in the case, and were necessarily involved, considered and determined by the judgment. These issues can not again be litigated.
The holding of the trial court in the instant case that these matters were res adjudicata was not erroneous.
Item 4 was left open and not determined by the circuit court in the prior hearing, and this was probably because there was small likelihood at that timé that the contingencies stipulated would happen, to-wit: that Pearl would die before her father, without leaving issue.
The only remaining question of moment to be determined is, whether or not item 4 is invalid for any reason other than fraud, undue influence, lack of knowledge or consideration.
*778 It is contended that said item is executory and testamentary, and, that, therefore, the stocks would pass to the defendant by will.
The plaintiff claims that when the instrument was signed, an executed trust was established, and, that, therefore, the said item was not testamentary.
The instrument provides that the plaintiff shall retain the certificates of stock, collect and use the dividends during his lifetime, vote the stock, and act as attorney for Pearl R. Lam-kin in reference thereto. Robinson was given dividend rights during his lifetime, with full power to safeguard those rights. At his death, if Pearl R. Lamkin was alive, she was to enjoy the complete ownership, or if her death preceded his and she left issue, they should be the unconditional owners. In the event of Pearl’s death, without issue, Robinson succeeded to all rights of ownership. By this arrangement, all contingencies were provided for, and the instrument is clear, complete and definite.
The court found that Pearl was the legal owner and that the beneficial interest in said stock was held by her father. Also by the decree therein, in holding that all items of the instrument were valid, except the survivorship in item 4, which was not passed upon, the legal owner had put the physical possession of the stock in the hands of her father. She had declared the trust and notified the defendant companies. She had put it out of her power to change the investments without the consent of the cestui que trust. He also was without power to change the investments, or to sell the securities without her consent, as the certificates had never been endorsed by her.
The specific authority granted by the instrument to plaintiff to act, even after the death of Pearl R. Lamkin was passed upon in the prior suit. Therein the agreement was declared valid and subsisting. How, therefore, can this be an executory trust?
Smith In re, 144 Pa. St., 428, syllabus 2 -.
“An executory trust, so called is one in which the limitations are imperfectly declared and the donor’s intention is expressed in such general terms that something not sufficiently declared is required to be done in order to complete and perfect *779 the trust and to give it effect. When the limitations are fully and perfectly declared, the trust is regarded as executed. ’ ’
All limitations are fully and definitely declared. Had this stock been transferred to another person to hold as trustee, and the same provisions made as are incorporated in this instrument it would not have been invalid. Pearl R. Lamkin held only the naked, legal title, and by her declaration of trust, and she designates it as a trust in said item 4, she made her act irrevocable, except with the consent of the cestui que trust. She further executed copies of the instrument, which were served on the companies issuing the stock, so that her declaration of the trust was made to all interested parties.
An owner may declare himself a trustee in the same manner as if he transferred the legal title to a third person with a similar declaration. Smith, In re, supra.
In the case of Bruer v. Johnson, 64 Ohio St. 7 [59 N. E. 741], it was held that a person may sui juris orally, or in writing, declare that he holds personal property for another, and that such declaration constitutes him a trustee of such property, and also that such a declaration of trust may operate after the death of the declarant.
This was a trust where no consideration was paid. There is nothing in the instrument in question that is executory. An owner may declare a trust and hold the naked, legal title in the same manner as if the title is transferred to a neutral trustee, and in this case the beneficial interest is separated from the legal title. This principle is referred to in: Jones v. Luplow, 13 App. 428 (31 O. C. A., 517); Flanders v. Blandy, 45 O. S., 108, 116; Worthington v. Redkey, 86 O. S., 128 [99 N. E. 211]; Locke v. Farmers Loan & Tr. Co., 140 N. Y., 135 [35 N. E. 578]; Martin v. Funk, 75 N. Y., 134 [31 Am. Rep. 446].
The court is of the opinion that this was a valid, executed trust, complete, definite and precise in its terms, all conditions of which can be fully carried out, and the subject matter concerns property which is subject to contract.
Holding the instrument to be a complete, executed and valid declaration of trust, precludes the theory that it is testa *780 mentary. It may be well, however, to briefly consider the question of whether or not Item 4 could be considered testamentary in character. If so, it would be an endeavor to transfer personalty after death, without the formal requirements of a will, and would have been revoked by a subsequent will. A will does not take effect until the death of the testator. It may be revoked at any time prior to the death and no rights are acquired thereunder until after the death of the testator.
Under the instrument herein, rights are given during the lifetime of Pearl E. Lamkin. It is true that some of those rights are to take effect in possession and enjoyment only upon the happening of certain contingencies, that is, the death of Pearl E. Lamkin, without issue, but the rights given could not be revoked by her alone. The rights were granted at the time of the execution of the instrument, although possession and enjoyment of some of those rights were postponed until her death. Such an instrument is not testamentary. Disposition of property to take effect at death may be controlled and not be testamentary if a present interest passes, and the disposition made is not revocable. Robb v. Washington and Jefferson College, 185 N. Y., 485 [78 N. E. 359]; Patrick v. Parrott, 92 Ohio St. 184 [110 N. E. 725]; Lewis v. Curmett, 130 Ia. 423 [106 N. W. 914] ; Emery v. Darling, 50 O. S., 160 [33 N. E. 715].
It is also contended that the defendant by this trust agreement was deprived of his rights in the stock, and that this was a fraud upon his marital rights. We do not consider that there was any merit in this contention. Sections 7798 and 7799 Gr. C.; Urner v. Yager, 9 Dec. Re. 592 (15 Bull. 264), affirmed no op. Urner v. Yager, 27 Bull. 148.
An examination of the record and a study of the voluminous briefs herein does not disclose any error prejudicial to the plaintiff in error.
The decree below refers to 381 31-100 shares of the second preferred stock in the United States Printing & Lithographing Co. This should be corrected to read 281 31-100 shares.
The judgment below, with the above correction, will be affirmed.
Hamilton and Cushing, JJ., concur.