JUNIUS H. HATCH ET AL. V. THE COMMON COUNCIL OF
THE VILLAGE OF ST. JOSEPH ET AL.

*Equity—Bill to quiet title—Grant of lands—Acceptance—Trust deed
—Reversion—Statute of limitations—Laches.*

1. Where a bill was filed to quiet the title to lands, and dismissed on
   general demurrer, prior to Act No. 260, Laws of 1887, taking
   effect, the Supreme Court may sustain the bill under said amenda-
   tory statute, if it states facts entitling the complainant to equita-
   ble relief and is properly filed as a bill to quiet title.
2. Where land is conveyed upon trusts, and the grantor absolutely
   divests himself of his title, without any power of revocation,
   and 30 years have elapsed, and the rights of third parties have
   intervened, a bill will not lie to revoke said deed for the alleged
   non-performance of said trusts.
3. The law presumes the acceptance of a beneficial grant by the
   grantee.
4. Statutes of limitation will be applied in equity where they would
   bar the claim at law.
   So *held*, where a bill was filed for a forfeiture of a deed for the
   non-performance of a condition subsequent more than 25 years
   after such alleged right accrued, during which time the com-
   plainants, and those under whom they claimed, had slept upon
   their rights.

Appeal from Berrien. (Smith, J.) Argued January 5,
1888. Decided January 19, 1888.

Bill to quiet title, etc. Decree sustaining a general demur-
rer, and dismissing bill, affirmed. The facts are stated in
the opinion.

*Edward Bacon,* for complainants.

*George S. Clapp,* for defendants.

LONG, J. It appears that the bill in this case was filed to
quiet the title of the complainants to certain lands in Berrien

county, to which they claimed to derive title under the last will of Junius H. Hatch, late of Buffalo, in the state of New York, bearing date of May, 1868, which was executed and tested as by law is required for passing real estate by devise, and in which complainants were nominated and appointed executors, and by which they were devised all the real and personal estate of the testator.

It is claimed by the bill that said Junius H. Hatch, deceased, on July 29, 1834, and in his life-time, was seized in fee-simple of four-tenths of all that part of the village of St. Joseph, in Berrien county, lying between Front and Vine and Water streets, which is painted or colored on the original plat, and designated as "side-hill;" also such lots in said village as are marked and designated in such original plat for an academy, for a court-house, a city-hall, a jail, market-house, and churches; also of lots numbered 488, 489, 490, 491, 492, and 493; and that the lots so marked were numbered as follows: Lot 383 for an academy; lot 237 for a court-house; lot 200 for a city hall; lot 274 for a jail; lots 229, 245, and 41 for markets; lots 313, 317, 376, 384, 394, and 399 for churches.

That on said July 29, 1834, Jonathan Hailman, Lucius Lyon, Tollman Wheeler, Calvin Britain, Jeremiah Price, Enoch Jones, Austin E. Wing, Charles Noble, Warner Wing, William McKaleb, and Lorain Marsh owned or had some interest in the rest and residue of said lands, but their exact interest or title complainants are unable to state.

That since the death of said Junius H. Hatch complainants have made search in the office of the register of deeds of Berrien county, and find therein recorded a trust deed in words following:

"Know all men by these presents that we, Enoch Jones and Sophronia I., his wife, Junius H. Hatch, William McKaleb, Lorain Marsh, Bacon Wheeler, and Delia M., his wife, Jonathan Hailman, Lucius Lyon, and Calvin Britain, Charles Noble and Eliza S., his wife, and Austin E. Wing and Harriet, his wife, being either original or present pro-

prietors of the village of St. Joseph, on the land upon which the said St. Joseph (formerly Newberry Port) was laid off, do hereby grant, bargain, and convey, and forever quitclaim unto the president, trustees, and freemen of the village of St. Joseph aforesaid, for the use and benefit of the corporation, all our right, title, claim, and interest in and to all that part of the said village lying between Front and Vine and Water streets which is painted or colored on the original plat, and designated as 'side-hill,' for and in consideration, and upon that condition only, that the same be and forever remain a public common, and not be converted to any other use; that the same shall be cleared, ornamented, and beautified for a public walk or promenade, so soon as the corporate authorities of said village shall deem it practicable to do so at their expense, but at all events within ten years; and that no part thereof shall be excavated or removed except for the purposes aforesaid, or for widening or improving the streets, or some part thereof. And also all our rights and title to such lots as are marked and designated in the said original plat for an academy, a court-house, a city hall, a jail, market-houses, and churches, to be by the said president, trustees, and freemen of the village of St. Joseph held in trust as follows, to wit: 237 and 274 for the county of Berrien, so long as the seat of justice for said county shall remain at St. Joseph,—lot No. 237 for a court-house, and lot 274 for a jail; lots 229, 41, 383, and 200 to be for the use of the said corporation, as severally designated on said plat. And such lots as are designated on said plat for churches are to be held in trust for and c nveyed as follows, to wit: Such church as shall make the first selection shall be entitled to the first choice, each denomination one lot, for the use of such church, and conveyance to be made by said corporation so soon as a church be erected thereon and fit for use, and which shall be deemed by the corporation to be worth two thousand dollars or more. And the conveyances hereby made to the president, trustees, and freemen are for the further consideration and upon the condition that, within three months after these presents shall be duly executed and acknowledged by each and all the above-named proprietors, the said president, trustees, and freemen of the village of St. Joseph shall cause a correct and accurate scale of the original survey of said village to be affixed to the original plat, or to a true transcript thereof, with a representation of the dimensions or size of the several lots, and the width of the streets and alleys, with the extension of Water street through the ship-yard, and the addition of

lots 488, 489, 490, 491, 492, and 493, as noted in pencil-mark on the original plat now in possession of Major Calvin Britain, and shall officially sanction the alteration male in regard to the ship-yard, and lay out and establish a continuation of Water street through the same, to be entered of record in the register's office of the county of Berrien,—then and in that case the title hereby granted be veste i in the said president, trustees, and freemen of the village of St. Joseph, and their successors, forever, for the purposes aforesaid, with the right of reversion; but in case of failure of the considerations herein mentioned, or a violation of the conditions herein contained, the title hereby granted shall revert, so far as relates to the side-hill, or land lying between Vine and Front and Water streets and west of State street, to the undersigned and their heirs.

"In witness whereof, the said Enoch Jones and wife, Tollman Wheeler, and Calvin Britain in proper person, and Jonathan Hailman, Lucius Lyon, Lorain Marsh, William McKaleb, Junius H. Hatch, Warner Wing and wife, Charles Noble and wife, and Austin E. Wing and wife, by Thomas Fitzgerald, as their attorney in fact, have hereunto set their hands and seals the twenty-ninth day of July, 1834. (The words 'for ourselves and our heirs' interlined before signing, and also the words 'and Water.')

[Signed]  " JUNIUS H. HATCH,                                    [Seal.]
              " By his Attorney, Thomas Fitzgerald.  [Seal.]
          " JONATHAN HAILMAN,                            [Seal.]
              " By his Attorney, Thomas Fitzgerald.  [Seal.]
          " LUCIUS LYON,                                        [Seal.]
              " By his Attorney, Thomas Fitzgerald.  [Seal.]
          " TOLLMAN WHEELER and DELIA WHEELER,  [Seal.]
              " By their Attorney, Bacon Wheeler.   [Seal.]
          " CALVIN BRITAIN.                                    [Seal.]
          " JEREMIAH PRICE.                                    [Seal.]
          " BACON WHEELER.                                    [Seal.]
          " E. JONES.                                              [Seal.]
          " S. I. JONES.                                            [Seal.]
          " AUSTIN E. WING and                            [Seal.]
          " HARRIET WING,                                      [Seal.]
              " By their Attorney, Thomas Fitzgerald.  [Seal.]
          " CHARLES NOBLE and                            [Seal.]
          " ELIZA NOBLE,                                        [Seal.]
              " By their Attorney, Thomas Fitzgerald.  [Seal.]
          " WARNER WING and                              [Seal.]
          " ELIZA A. WING,                                      [Seal.]
              " By their Attorney, Thomas Fitzgerald.  [Seal.]
          " WILLIAM McKALEB,                              [Seal.]
          " LORAIN MARSH,                                    [Seal.]
              " By their Attorney, Thomas Fitzgerald.  [Seal.]"

That the piece of land described as lying between Front, Vine, and Water streets, and designated as "side-hill," has not been cleared, ornamented, or beautified; that it has not been improved in any respect, but, on the contrary, it has been used and claimed by the owners of adjacent lots as appurtenant to the same, and for the purpose of carrying on of business by different individuals.

That lot 283 remains vacant, but that the corporate authorities have executed a deed purporting to convey the same to one James B. Sutherland.

That lot 200 said corporate authorities have permitted to be occupied for a blacksmith shop.

That lot 274 is used by one Lydia Stinson for a stable.

That lot 229 has until lately been occupied for a school, and is now used for pasting show-bills.

That lot 245 has been conveyed by the corporate authorities to the trustees of the First Congregational Church of St. Joseph.

That lot 41 has never been occupied.

That lot 313 is occupied for a dwelling-house, and has been conveyed by such corporate authorities to the First Society of the Methodist Episcopal Church for a parsonage.

That lot 237 has been conveyed to said society for church purposes, and a house of worship erected thereon.

That lots 317, 394, and 339 are vacant, and have never been used or occupied for any purpose.

That lot 376 is occupied by the Roman Catholic Church, and lot 384 by the church of the German Baptist Society.

It is further claimed by said bill that neither the said president, trustees, and freemen, nor their successors or other person, has caused a correct and accurate scale of the original survey of the village of St. Joseph to be made, nor have said corporate authorities extended Water street, as by said deed they were required to do; that the court-house and jail

for the county of Berrien were located at Oronoko, in said county, by act of the Legislature, in 1837.

That at the time of the execution of said trust deed the grantors named had many other lots and pieces of land situated in the village of St. Joseph, and well hoped that the said corporate authorities would execute the trust thereby vested in them, according to the true meaning thereof; that the said corporate authorities have neglected and refused to execute the trust granted by said deed, and that by reason thereof such lots and pieces of land revert to the grantors named in said deed, their representatives and grantees; that said complainants have made efforts to sell said lands to pay certain legacies under said last will of Junius H. Hatch, deceased, but are unable to do so.

That while said lands are of great value, yet they cannot negotiate a contract for the sale of the same, by reason of the suspicion and cloud cast upon the title of complainants by said trust deed; and that complainants believe they could sell the same for a fair and reasonable price could such deed be canceled and set aside; and that the *grantors in said deed*, and their grantees, have at all times *been in possession* of all said lots and pieces of land not adversely occupied as hereinbefore stated.

That complainants are not able to ascertain with certainty who owns the other undivided parts of said land of which said deceased was not seized, but are informed and believe that they are owned by Benjamin C. Hoyt, Warren Chapman, Damon A. Winslow, Elizabeth Jane Williams, Julia A. Luce, and Sarah Martin, and that complainants have applied to said parties and solicited them to join as complainants in this bill, but that they refuse to do so.

That the common council of the village of St. Joseph have succeeded to all the rights, privileges, and franchises of the said president, trustees, and freemen of the village of St. Joseph, and that they, complainants, have made application to

68 MICH.—15.

said common council of the village of St. Joseph, and requested them to convey and release to complainants all their rights and interests in said lands, but they refuse so to do.

That they have also requested the said trustees of the First Congregational Church, the trustees of said First Society of the Methodist Episcopal Church, and the said James B. Sutherland, respectively, to convey and release their present title and claims to said lands to complainants, but they each refuse so to do.

It is further claimed in and by said bill that, if said trust deed ever granted any title to said trustees, yet, by reason of the neglect on the part of the grantees therein named, the same has become null and void, and the same is a cloud upon complainants' title; and complainants pray that said common council of the village of St. Joseph may, by order and decree of the court, be compelled to surrender and deliver up said trust, and that the same be canceled, and that the title of said trustees of the First Society of the Methodist Episcopal Church, the trustees of the First Congregational Church, and James B. Sutherland be declared to be void and be delivered up to be canceled.

The defendants the common council of the village of St. Joseph, the trustees of the First Society of the Methodist Episcopal Church in the village of St. Joseph, and the trustees of the First Congregational Church of the village of St. Joseph, appeared and demurred to said bill, setting out, as causes of demurrer, that the bill does not set forth any cause of action cognizable in a court of equity, and that said bill does not contain any matter of equity sufficient to establish any right or demands against the defendants.

The cause was brought on for hearing in the circuit court for Berrien county, in chancery, on the demurrer, and decree entered therein by said court dismissing said bill, with costs to defendants, on August 10, 1887; and from this decree complainants appeal.

Complainants now insist that, if the bill cannot be sustained as one to quiet title, yet it can be as one for partition, insisting that it contains all necessary statement of facts for that purpose, and that the court could grant relief under the general prayer "for such other and further relief in the premises as may be agreeable to equity."

Under the statutes in force prior to September 28, 1887, a bill to quiet title could only be maintained by one having the *actual* possession of the premises. How. Stat. § 6626; *Stockton v. Williams*, 1 Doug. 565. This is too well settled in this State to require citation of authorities. To entitle a party to relief he must show—

1. Possession.
2. A legal or equitable title in himself.
3. A claim set up by some other person.
4. His title must be substantiated. *Stockton v. Williams*, 1 Doug. 565.

The statute above cited was amended by Act No. 260, Laws of 1887, so as to read as follows:

"Any person claiming the legal or equitable title to lands, whether in possession or not, may institute a suit in chancery against any other person, not in possession, setting up a claim thereto in opposition to the title claimed by the complainant; and, if the complainant shall establish his title to such lands, the defendant shall be decreed to release to the complainant all claims thereto, and pay costs, unless the defendant shall, by his answer, disclaim all title to such lands, and give a release to the complainant, in which case costs shall be awarded as the court may deem just."

If the facts set up in the bill would entitle the complainants to equitable relief, this Court might overrule the demurrer, and sustain the bill under the above statute as a bill to quiet title, though the statute was not in force at the time the court below dismissed the bill. We do not view the bill, however, as one properly filed to quiet title, or for partition; and the only question before us is whether there is any matter in the bill upon which any equitable relief whatever could

be justified. If there is, the demurrer cannot be sustained. The bill is not filed to *enforce* the trust created by the trust deed, but for the purpose of declaring a forfeiture, and thus revesting the property in the complainants.

Junius H. Hatch, when he made the deed of July 29, 1834, if he had not already done so by his former act of dedication, divested himself of his title in all the lands conveyed, so that only by some subsequent act or event could he have any further interest in it.

It is not necessary upon this record to determine whether any estate was left in Junius H. Hatch which was devisable or descendible to the devisees under the will, or to them as heirs at law, as all the material conditions in the deed were conditions subsequent. All the property except that called the "side-hill" is expressly conveyed upon trusts. The language of the deed expressly declares that as to that part so conveyed there shall be no reversion, and as to the remainder, or side-hill property, it is declared that in case of failure of consideration, or violation of the conditions therein mentioned, the title granted was to revert, so far as related to the side-hill. So that Junius H. Hatch divested himself absolutely of the title of all the property, without any power of revocation, except the side-hill property.

After the lapse of more than 30 years, and after other parties have acquired rights and interests therein, and in view of the fact that the deed expressly declares there shall be no reversion, we do not think this Court has any right to grant the relief prayed.

The property called the "side-hill" property, described as lying between Vine, Front, and Water streets, and west of State street, was the only property mentioned as being affected by the following provisions in the deed:

"But in case of failure of the considerations herein mentioned, or a violation of the conditions herein contained, the title hereby granted shall revert," etc.

And by another clause in said deed it is provided that—

"All that part of the said village lying between Front and Vine and Water streets which is painted or colored on the original plat, and designated as 'side-hill,' * * * be and forever remain a public common, and not be converted to any other use; that the same shall be cleared, ornamented, and beautified for a public walk or promenade, so soon as the public authorities shall deem it practicable to do so at their expense, but at all events within ten years."

This grant was a beneficial one, and the law presumes its acceptance by the grantees. These conditions were all conditions subsequent. The title vested in the grantees at the delivery of the deed, and if any forfeiture was incurred it was at the end of the 10 years from the delivery of the deed; and at that time, if complainants had any rights in this piece of property by reason of the forfeiture, such rights had then accrued. More than 25 years had elapsed since such rights accrued before filing this bill. Rev. Stat. 1838, pp. 573, 574, provide:

"The right to make an entry or bring an action to recover land shall be deemed to have first accrued at the times,
* * * * * * * * * * * * * * * * * *
"Third. * * * When the intermediate or precedent estate would have expired by its own limitations, notwithstanding any forfeiture thereof for which he might have entered at an earlier time.

"Fourth. The preceding clause shall not prevent any person from entering when entitled to do so by reason of any forfeiture or breach of condition; but, if he claims under such a title, his right shall be deemed to have accrued when the forfeiture was incurred or the condition was broken.

"Fifth. In all cases not otherwise provided for, the right shall be deemed to have accrued when the claimant, or the person under whom he claims, first became entitled to the possession of the premises under the title upon which the entry or action is founded."

These provisions have been carried in the statutes ever since. Rev. Stat. 1846, pp. 598, 599; Comp. Laws, 1857, pp.

1403, 1404; Comp. Laws, 1871, pp. 1974, 1975; How. Stat. §. 8700.

Statutes of limitation will be applied in equity where they would bar the claim at law. *McLean v. Barton,* Har. Ch. 287, 288; *Smith v. Davidson,* 40 Mich. 633.

If the complainants ever had any rights in the property under the will of Junius H. Hatch, we think they have slept too long upon their rights; and from the facts appearing upon the face of the bill we do not think complainants have any rights relievable even in a court of equity, and the court was right in sustaining the demurrer.

The decree of the court is therefore affirmed, with costs.

SHERWOOD, C. J., CHAMPLIN and MORSE, JJ., concurred. CAMPBELL, J., did not sit.