S. H. LEWIS, Appellee, v. CALLIWAY CURNUTT, HERBERT AMOS LEWIS, THE BOARD OF MINISTERIAL RELIEF AND THE NATIONAL CHRISTIAN WOMAN'S BOARD OF MISSIONS, Appellants.

**Testamentary disposition of property:** TRUSTS. A valid disposition
1  of property may be made, to take effect upon the death of the grantor, by the execution and delivery of a warranty deed coupled with a separate instrument creating a trust and defining the powers and duties of a trustee, where such appear to have been the intent of the grantor and the transaction is not in contravention of public policy, even though the writings were not executed in the manner required respecting wills.

**Trusts:** POSTPONEMENT OF EXECUTION. That the terms of a trust
2  postpone the time when it shall become effective does not negative the idea that a present interest is created in favor of the *cestui que trust,.* where the instrument has been delivered to the trustee.

**Trusts:** PAYMENT OF EXPENSES. It is no objection to the validity of
3  a trust for settlement and distribution of an estate, that the trustee is directed to first pay the expense of administering the trust.

**Power of revocation:** RECONVEYANCE. The power of revocation re-
4  served to the grantor of a trust does not prevent the passing of a present interest upon delivery of the deed; and a reconveyance to the granter of a portion of the land held in trust will have no effect in determining whether a present interest passed by the delivery.

**Consideration:** NOTICE TO BENEFICIARIES. Where the purpose of a
5  trust is meritorious and the same has been completed by a delivery of the proper writings it is supported by a sufficient con-

sideration; and the fact that the beneficiaries had no notice of the provision in their favor is not an objection to its validity.

**Construction:** EXTENT OF TRUSTEE'S POWER. Where the instrument creating a trust provided that the trustee should hold the property "for and in behalf of" the grantor, and to do any act in carrying out the trust which the grantor "could do if present" he held the property, not solely for grantor during her lifetime, but also for the beneficiaries upon the grantor's death.

**Beneficiaries:** CORPORATE CAPACITY. A trust in favor of an eleemosynary institution is not invalid because of a lack of corporate capacity in the beneficiary.

*Appeal from Buena Vista District Court.*— HON. A. D. BAILIE, Judge.

TUESDAY, APRIL 10, 1906.

THE opinon states the case.— *Reversed.*

*F. F. Faville* and *L. A. Smyers,* for appellants.

*Milcrist & Scott* and *Helsell & Schultz,* for appellee.

WEAVER, J.— On August 25, 1903, Julia E. Crockett, being the owner of the W. ½ of the S. E. ¼ of section 8, township 90 N., of range 35 W., in Buena Vista county, Iowa, and lot No. 3 in block 42 in the city of Storm Lake, Iowa, conveyed the same to " Calliway Curnutt, trustee." The conveyance was by warranty deed in the usual form and for the expressed consideration of " one dollar and the execution of the trust hereby created." At the same time as a part of the same transaction the grantor made and delivered to Curnutt another written instrument in the following form:

I, Julia E. Crockett, of the city of Storm Lake, in Buena Vista county, and state of Iowa, do hereby make, constitute, and appoint Calliway Curnutt, of Buena Vista county, Iowa, a trustee, for and in behalf of myself to receive, acquire, take, and hold title to the following real es-

tate, situated in the county of Buena Vista and state of
Iowa, to wit:   The west half (½) of the southwest quar-
ter of section eight (8) in township ninety (90), range thir-
ty-five (35), west of the 5th P. M.   Also lot number three
(3) in block number forty-two (42) in the city of Storm
Lake, according to the recorded plat thereof, from and after
my death, and not before, to execute, transfer, and convey
perfect title to the above real estate, and also any and all
personal property of which I may die seised or possessed,
and I hereby empower him to do any act which I could do
if present, subject to the following conditions:   (1)   At
my death said trustee shall immediately take possession and
have control of all my property both real and personal, and
he shall first out of the proceeds of the land above described
he shall pay the expenses of my last sickness, funeral ex-
penses, and settlement of my·estate in full.   (2)   To the
Board of Ministerial Relief of the Church of Christ, corpora-
tion organized under the laws of the state of Indiana, he shall
pay the sum of one thousand ($1,000) dollars, to be applied
and used for the relief and support of aged ministers of the
gospel of Christ of said Christian Church and their wives.
(3)   I hereby direct said trustee to give to the National
Woman's Board of Missions, also a corporation under the
laws of the state of Indian, one thousand ($1,000) dollars,
said money to be used by them solely in the work of negro
education evangelization.   (4)   I hereby direct that out of
the proceeds of said property the said trustee shall pay to
my great grandson, Herbert Amos Lewis, of Storm Lake,
Iowa, eight hundred ($800), to be used by his parents in
his education. . (5)   I hereby direct said trustee that out
of the proceeds of said property he is to pay to the North-
western Missionary Society for the Christian Church seven
hundred ($700) dollars, to be used by them only in the
northwest district of Iowa, and said sum is to be paid to its
secretary.   (6)   I hereby direct the trustee named to pay to
my grandson, Scribner Herbert Lewis, of Storm Lake, Iowa,
all the rest, residue, and remainder of my property after the
above provisions are complied with, be the same real, per-
sonal, or mixed, and wheresoever located to be his property
absolutely, after the five provisions are fully complied with.
Lastly, I hereby direct said trustee to sell the real estate
above described or so much thereof as is necessary, and first
apply the proceeds thereof to the payment of the five first

provisions hereof, and when they have been complied with to turn over to my grandson all moneys and property then on hand. Dated at Storm Lake, Iowa, this 25th day of August, A. D. 1903.        Julia E. Crockett.

In October, 1903, the trustee quitclaimed the above-mentioned lot in Storm Lake to Mrs. Crockett, and thereafter she sold and conveyed it to a third person not a party to this suit. On December 9, 1903, Mrs. Crockett died intestate, leaving the plaintiff, Scribner Herbert Lewis, as her only heir at law. Thereafter, proceeding on the assumption and claim that the deed and declaration of trust to Curnutt were void, plaintiff brought this action to quiet the title to the eighty-acre tract of land in himself. By their answers and cross-bills the defendants deny the plaintiff's claim of title and ask to have the deed and declaration of trust confirmed and established according to the expressed intention of their grantor. Replying, the plaintiff alleges that the conveyance to the trustee and the written instrument defining the trust do not in fact create a trust as known or defined by law, but are in the nature of a last will and testament, and, not being executed and witnessed as the statute requires, such testamentary provision is void, and no right or title in the property can be predicated thereon. Upon the issues thus joined the trial court found for the plaintiff and entered a decree quieting the title in him as prayed. The defendants appeal.

The appellee plants his claim to the relief demanded upon the single proposition that the disposition or attempted disposition of her property by Mrs. Crockett was

1. TESTAMENTARY DISPOSITION OF PROPERTY: trusts.

testamentary in character, and the writings, not having been executed in the manner and form required by statute respecting wills, are without legal force or effect. If the term " testamentary " is to be so defined as to include every provison by which a person may in his lifetime direct or control the disposition which shall be made of his property and estate after

his death, then the correctness of the appellee's theory would necessarily have to be conceded; for it is too clear for controversy that by the deed and trust instrument executed by Mrs. Crockett she sought, while reserving to herself the beneficial use and enjoyment of her property during her life, to designate those who should come into its enjoyment after her death. But not every method by which such ends may be legally accomplished is testamentary. A valid testamentary provision is a provision made by will duly executed in substantial conformity to the law. It speaks, and is intended to speak, from the date of the death of the testator, and not earlier. Until that time the title, legal and equitable, remains unchanged in the testator, and he may sell, convey, and dispose of the same as fully and completely as if no will had ever been made by him. No right, title, or interest of any kind in the thing devised or bequeathed passes to the devisee or legatee until the death of the testator, and not then if it appear that he has otherwise disposed of the subject of the devise or bequest during his lifetime.

But the disposition of property after the death of the owner, the uses to which it shall be devoted, and the designation of the persons who shall then come into its beneficial use and enjoyment, is often effectually accomplished otherwise than by will. For example, the owner of real estate may without any valuable consideration make and execute an ordinary deed of conveyance to a designated grantee, and deposit the same in the hands of a third person, to be delivered to the grantee only upon the death of the grantor, and such conveyance is held to be operative, even though made without the knowledge, or express or formal consent or acceptance, of the grantee. See *Foreman v. Archer,* 130 Iowa, ——, and cases there cited. This is certainly true where the deposit is made without any reserve power to recall it; but even a reserved power to recall, which is not exercised during the life of the grantor, has been held

by us not to destroy the effectiveness of the conveyance. *Lippold v. Lippold,* 112 Iowa, 134; *Newton v. Bealer,* 41 Iowa, 334.

The same purpose to direct and control the disposition of property beyond the life of the owner is very frequently accomplished through a trustee, who may be appointed by will, or by deed, or other suitable declaration of trust. Subject only to the condition that the purpose of the trust be not in contravention of the command or policy of the law, the right and power of the owner of property to thus dispose of it is elementary, and we need not stop here to cite authorities. In the language of Earl, J., in *Hollis v. Drew Seminary,* 95 N. Y. 166:

The general rule is that one may do with his property as he pleases. He may dispose of it by will in any way that suits his fancy or judgment. He may give it all to strangers, and disinherit his relatives. He may give it all to natural persons, or to corporations capable of taking. He may give it directly, or create trusts which the law allows; and this general power of disposition he possesses down to the last hour of conscious intelligent existence. It is not against public policy to allow gifts to charitable, benevolent, scientific, or educational institutions. The law allows and encourages such gifts, and those who make them are commended as benefactors of their race. Such institutions, dotted all over our land, to succor, elevate, and educate men, and ameliorate their condition, are distinguishing features of our modern civilization.

Whether the trust be created by will or by deed, if it be lawful, and the intent can be fairly ascertained from the examination of the instrument, the courts will uphold and enforce it. To that end they will not be restrained by narrow and technical rules of construction; but, if the intent of the grantor or donor be apparent, even though not expressed with technical nicety, the trust will not be avoided. " The intent of the settlor in the creation of trusts is what the courts look to, and not to any particular form of words;

and that is to be carried into effect unless it contravenes some public policy of the law." *Wright v. Miller,* 8 N. Y. 21 (59 Am. Dec. 438); Lewin on Trusts, 137.

No claim is made in the argument that the trust which the grantor in this case very clearly attempted to make violates any law or principle of public policy. So far as their legal effect is concerned, the characteristic distinction between a will and a trust is that, while the former becomes operative only at the death of the testator, a trust passes an interest to the trustee and beneficiary instantly upon the execution and delivery of the writing by which it is created. If, then, the transaction between Mrs. Crockett and Curnutt had the effect *eo instante* to pass any interest in the property from the former to the latter, or to the parties named in writing accompanying the deed, then the trust thus created is not to be avoided simply because such writing was not executed and witnessed in the form prescribed by statute for the making of a will. The grantor laboring under no disability, and there being no claim or pretense that she was impelled by fraud, and the deed being in apt and proper form for the conveyance of title to real estate, the necessary and unavoidable effect of its execution and delivery was to convey the legal title to this property out of the grantor and into the grantee. From that moment the grantee held such title either in his own right or in trust for another. He does not claim to hold in his own right, and we must determine the nature of the trust and the identity of the *cestui que trust* by reference to the writings. This we may readily do. It is impossible to read these instruments, and give to their language its fair and ordinary meaning, without understanding that, subject to her own life use and enjoyment, the grantor intended and in apt words undertook to and did authorize her trustee to convert this property into money and distribute it in defined proportions to the several parties therein named, and in the last analysis the case presents the single question whether the postponement of the

exercise of the trustee's authority to take possession of the property and make sale and distribution thereof until after the grantor's death operated to nullify or neutralize the deed of conveyance and prevent the passing of any interest thereby to the trustee and the beneficiaries represented by him. The argument of the appellee affirming this proposition presses upon our attention several points to which we now turn.

It is said that the words " from and after my death and not before," which are found in the writing, limit and modify the authority given in the earlier part of the same instrument " to take and hold title " to the property. In other words, according to this theory, while the deed, standing alone, would be sufficient to pass a present title and interest, the terms of the accompanying writing are inconsistent with such a purpose, and the repugnance thus arising operates to neutralize and destroy the grant. As we shall hereinafter note, if any such repugnancy be found, it could not have the effect claimed for it; but we think it does not exist. Upon a fair construction of the writings as a whole, the words " from and after my death " have no reference to the time when the title or interest shall pass under the deed, but to the time when the trustee shall have authority to take possession and proceed with the active performance of his trust. That this must be so is to be seen, not only from the language employed, but from the fact that then and there and as a part of the same transaction the grantor made and delivered to the trustee an unconditional conveyance of the title. We must assume that the grantor was a person of average intelligence, and meant something by this formal deed and declaration. To suppose that, while delivering with one hand to the trustee a deed the legal meaning and effect of which she is held to have understood, she also passed to him with the other hand an instrument by which the deed was intended to be made null and void, is to assume that the entire deal was a solemn farce. It is too clear for contro-

*2. TRUSTS: postponement of execution.*

versy that, while desiring to devote the property to the stated purposes, Mrs. Crockett wished to retain the benefit of its use and enjoyment during her life, and that the withholding of the authority to the trustee to sell the property and distribute the proceeds to the beneficiaries until after her death was the plan adopted to secure her such reserved right. That idea is expressed not only in the phrase " from and after my death and not before," but in the later clause of the instrument, where she provides that " at my death " the trustee shall immediately assume possession and control, convert the property into money, and distribute the proceeds. Now the fact that a deed, conveyance, or contract postpones the time when it shall become effective to a date in the future does not negative the idea that a present interest is thereby created in favor of the party for whose benefit it is made. The statute provides that an estate may be created to begin in the future ('Code, section 2917), and, while such a grant passes no present title, it does pass a present interest in the property to the grantee. *Leaver v. Gauss,* 62 Iowa, 314.

The same may be said of a case where a deed is deposited with a third party to be delivered to the grantee on the death of the grantor. *Lippold v. Lippold,* 112 Iowa, 134. It is even more clearly true in respect to property devoted to a trust, the benefit of which is postponed until the death of the owner. *Nichols v. Emery,* 109 Cal. 323 (41 Pac. 1089, 50 Am. St. Rep. 43). In the cited case the owner of land conveyed the title to a trustee, reserving the use of the property to himself during life, and authorizing the trustee to convert the same into money after the grantor's decease and distribute the proceeds to named beneficiaries. This was held a valid trust. The court there says: " It is important to note the distinction between the interest transferred and the enjoyment of that interest. . . . The language is appropriate to a conveyance, and the grantor's execution and delivery of the deed, he being under no disability and impelled by no fraud, operated to vest so much

of his estate in the trustee as was necessary to carry out the purpose of the trust." Indeed, it is an elementary rule of equity that whenever a trust is declared, whether there be or be not any technical words of conveyance, the trustee is held to be vested with whatever title is necessary to enable him to carry out the provisions of the trust. *Meek v. Briggs,* 87 Iowa, 610; *Webster v. Cooper,* 14 How. 499 (14 L. Ed. 510); *Tobias v. Ketchum,* 32 N. Y. 327; 2 Pom. Eq. Jur., section 1011.

It needs no argument to support the proposition that the owner of land may sever the fee into a life estate and a remainder, and that he may reserve the former to himself and sell or give the latter to whomsoever he will. When he has done so, can it be said that the grantee of the remainder acquires no present interest in the land simply because he cannot come into possession and enjoyment of the property until after the grantor's death? We think no lawyer will answer this inquiry in the affirmative. And yet such would be the necessary result if the contention of the appellee here be correct. Mrs. Crockett conveyed the property by an unconditional deed, and by an accompanying instrument provided that the trustee should not come into possession or control until after her death. The legal effect of this was to create a life estate in her and a remainder in the trustee for the benefit of the *cestui que trust.*

Moreover, it must be remembered that it is not necessary in any case to the establishment of a trust that any beneficial interest shall pass to the trustee. From its very nature a trust involves the idea of separation of the beneficial interest from the legal title. When a trust is executed by the delivery of a simple conveyance to the trustee, that act and instrument serve to pass an immediate present interest to the *cestui que trust,* no matter how far in the future the enjoyment of the benefit thus provided may be deferred. In *Forney v. Remey,* 77 Iowa, 549, we expressly decided that a trust by which the property should be held for the use of

the grantor during her life, and after her death be converted into money and distributed by the trustee, was valid and enforceable; and not to be avoided as being of a testamentary character. In *Williams v. Evans,* 154 Ill. 98 (39 N. E. 698), the Illinois court had occasion to pass upon a trust not materially unlike the one now before us. There the grantor made and delivered a trust deed conveying in general terms her entire property and estate, real and personal, to be held for her use and benefit during her lifetime, and after her death to be converted by the trustees into money and devoted to the building of a church. The grantor retained the possession, use, and control of the real estate so long as she lived. She also regained possession and control of her personal estate. Upon her death her heirs denied the validity of the trust, arguing as a ground thereof the fact that the property had never passed into the possession or control of the trustees during the life of the grantor, but the court overruled the objection and confirmed the trust. In *Kraft v. Neuffer,* 202 Pa. 558 (52 Atl. 100), a Pennsylvania case, a husband and wife conveyed their lands upon trust for themselves for life, and directing that after their death it be sold by the trustee and proceeds paid to third parties. This was held a valid trust. The inclination of the courts to uphold trusts of a lawful character and to effectuate the intention of the trustor is well illustrated in *McAuley's Estate,* 184 Pa. 124 (39 Atl. 31). In that case one McAuley had devised certain property to his sister Mary, with a verbal request that she provide for its sale after her death and the giving of the proceeds to certain charities. Later, and after the death of the sister, there was found among her papers a writing signed by her as follows: "By request of my dear brother my house on Duquesne Way is to be sold at my death and the proceeds to be divided between the Home of the Friendless and the Home for Protestant Destitute Women." Upon these facts a trust was upheld and a trustee appointed to carry it out.

The case of *Bromley v. Mitchell*, 155 Mass. 509 (30
N. E. 83) is quite in point upon the question now being
considered.    In that case a property owner on her deathbed
conveyed her entire estate to a trustee, to be applied first
to the payment of her debts and thereafter to distribute the
residue.    In sustaining this disposition as a valid trust the
court, after noting that the deed was absolute in form, pro-
ceeds to say:

These instructions and trusts certainly have a very tes-
tamentary look, and, as the deed was executed only two days
before the grantor died, we appreciate the strength of the
argument that the parties must have understood that the in-
strument was to take effect only if the grantor died, and that
is not a deed, but an ineffectual will.    But on the face of
the deed it is a conveyance operating at once and irrevocably,
and there is nothing in the parol trusts which is not reconcil-
able with the same interpretation.    It is perfectly possible
to convey all one's property upon a present irrevocable trust
to pay one's debts and so forth, as found in this case.    If
the trusts include gifts which do not pass into the possession
of the *cestui que trust*, that is not conclusive against the in-
strument being a deed and valid as such.

See, also *Wynn v. Wynn*, 112 Ga. 214 (37 S. E. 378);
28 Am. & Eng. Ency. Law (2d Ed.) 894; *Davis v. Ney*, 125
Mass. 590 (28 Am. Rep. 272); *Saunders v. Saunders*, 115
Iowa, 275; *Craven v. Winter*, 38 Iowa, 472; *Wilson v. Car-
rico*, 140 Ind. 533 (40 N. E. 50, 49 Am. St. Rep. 213);
*Brace v. Van Eps*, 12 S. D. 191 (80 N. W. 197); *Massey
v. Huntington*, 118 Ill. 80 (7 N. E. 269); *White v. Hop-
kins*, 80 Ga. 154 (4 S. E. 863); *Robinson v. Ingram*, 126
N. C. 327 (35 S. E. 612); *Kelly v. Parker*, 181 Ill. 49 (54
N. E. 615); *Love v. Blauw*, 61 Kan. 496 (59 Pac. 1059, 48
L. R. A. 257, 78 Am. St. Rep. 334); *Chrisman v. Wyatt*,
7 Tex. Civ. App. 40 (26 S. W. 759); *Graves v. Atwood*, 52
Conn. 512 (52 Am. Rep. 610); *Bunch v. Nicks*, 50 Ark. 367
(7 S. W. 563); *Kelley v. Snow*, 185 Mass. 288 (70 N. E.

89); *McDaniel v. Johns,* 45 Miss. 632; *Abbott v. Holway,* 72 Me. 298; *Durand v. Higgins,* 67 Kan. 110 (72 Pac. 567).

The case last cited is of value upon the effect which will be given to the writing accompanying the deed. There the grantor made and delivered to the grantees an unconditional deed, receiving from them a written agreement not to sell or convey the same during the grantor's lifetime without his consent, and agreeing that all property should remain in his possession and under his control as long as he should live, with the right on his part to sell the same as though no deed had been given to the grantees, and that the grantees would sign deeds for the property when requested so to do by the grantor. Of these facts it was held that an estate *in præsenti* was conveyed to the grantees and that the instrument was not testamentary. It was further held, and we think upon sound principle, that between a deed of land and a collateral writing made at the same time, if repugnance be found, the latter must yield; for, while a paper so given may be used to lessen, enlarge, explain, or qualify the estate conveyed by the deed, it will not be permitted to totally destroy such estate.

It is next argued that a trust could not have been intended, because the writings provide for the payment of the expenses and charges of settling of the grantor's estate, thus rendering possible the entire exhaustion of the property to the exclusion of the persons named as the beneficiaries. It is sufficient to say of this point that it has no support in principle or authority. It is competent for the trustor to convey his property to the trustee absolutely and without reservation or condition for the benefit of the objects of his bounty. He is equally at liberty to make the gift subject to the payment of his debts, and in the latter case the *cestui que trust* take the interest conveyed for their benefit *cum onere.* See Bromley v. Mitchell, *supra;* Kelley v. Snow, *supra.*

3. TRUSTS: payment of expenses.

Counsel say, also, that it was within the power of Mrs.

Crockett to revoke the trust at any time during her life, and
that she did in fact revoke it as to the lot in Storm Lake,
and that this is inconsistent with the passing

4. POWER OF
REVOCATION:    of any present interest by the deed.    If this
reconveyance.

were a correct construction of the writings, and
Mrs. Crockett had the lawful right to revoke the trust in
whole or in part, it is well settled that a power of revocation
reserved to the grantor of a trust does not prevent the passing
of a present interest by the delivery of a deed.    The interest
is, of course, subject to be defeated by the exercise of the
power; but, if the power is not exercised, the interest be-
comes absolute upon the death of the grantor.    " A power
of revocation, reserved in the deed, having never been exer-
cised, is precisely as if it never existed."    *Lines v. Lines,*
142 Pa. 149 (21 Atl. 809, 24 Am. St. Rep. 487).    But in
this deed there is neither an express nor implied power of
revocation, and nothing that the grantor and trustee could
thereafter do without the consent of the beneficiaries would
affect the interest or right which had passed to the latter
by virtue of the original grant.    *Kelley v. Snow, supra;
Dickerson's Appeal,* 115 Pa. 198 (8 Atl. 64, 2 Am. St.
Rep. 547); *Hatch v. St. Joseph,* 68 Mich. 220 (36 N. W.
36); *Massey v. Huntington,* 118 Ill. 80 (7 N. E. 269), 28
Am. & Eng. Ency. Law (2d Ed.) 899; *Kraft v. Neuffer,*
202 Pa. 558 (52 Atl. 100).    Such being the case, the fact
that the trustee reconveyed the Storm Lake lot to the grantor,
and that she conveyed it to a third person, can have no sig-
nificance in determining the legal effect of the original deed
and declaration of trust.    Were they the only parties in in-
terest, we might well look to the reconveyance as an indica-
tion of their own understanding of their rights; but, in the
absence of any showing that the *cestui que trust* had any
notice of that transaction or in any manner assented thereto,
it is of no legal weight against them.

The further point against the trust is made that the
beneficiaries had no notice of the provision in their favor,

and that no consideration for the benefits given passed to Mrs. Crockett. This objection is unavailing.

5. CONSIDERA-
TION: notice to Where the purpose of the trust is meritorious,
beneficiaries.
and the settlement of the trust has been perfected by the execution and delivery of a proper conveyance, no other consideration is required, and the acceptance of the gift by the beneficiary is presumed. *Richard v. Delbridge,* L. R. 18 Eq. 11; *Janes v. Falk,* 50 N. J. Eq. 468 (26 Atl. 138, 35 Am. St. Rep. 783); *Mize v. Bank,* 60 Mo. App. 358; *Cloud v. Calhoun,* 10 Rich. Eq. (S. C.) 358; *Stone v. King,* 7 R. I. 358 (84 Am. Dec. 557); *In re Webb's Estate,* 49 Cal. 541; *Padfield v. Padfield,* 72 Ill. 322; *Williamson v. Yager,* 91 Ky. 282 (15 S. W. 660, 34 Am. St. Rep. 184); *Lane v. Ewing,* 31 Mo. 75 (77 Am. Dec. 632); *Van Cott v. Prentice,* 104 N. Y. 45 (10 N. E. 257). It is only when the establishment or creation of the trust still rests in promise, or in other words, while still executory, or where for some reason the trust is incomplete, and requires some further act on part of the grantor to perfect a transfer of the title to the trustee or to designate the beneficiary of the trust, and the aid of the court is invoked by the trustee or beneficiary for its perfection or enforcement, that the question of consideration is of any materiality. No such circumstances exist in this case. The trust here being considered was fully executed by the grantor by the delivery of a deed in proper form conveying the title, and a written declaration clearly and unequivocally defining the trust and pointing out the beneficiaries. Nothing whatever remained for the grantor to do to effect the passing of the legal title to the trustee or the beneficial interest to the *cestui que trust,* subject only to the reservation in her favor. Such transfer of title and interest was the instant effect of the making and delivery of the deed and declaration.

The argument that, even if a present interest or title did pass to the trustee, it was in trust for the grantor alone, or a mere power or agency which necessarily ceased with

her death, cannot be upheld. It is true that in appointing the trustee the grantor uses the words " for and in behalf of myself," and authorizes him to do any act necessary to the carrying out of the trust which she herself " could do if present." But what is he appointed to do? It is simply to take and hold the title until the grantor dies, and then to convert the property into money and to distribute it to the proper parties. In so doing he is in a very just sense of the term acting for and in behalf of the creator of the trust. Though dead when her benefaction is consummated, she speaks and acts through her trustee, as she would speak and act through her executor, had she chosen to make similar distribution of her property by will. The general authority given to the trustee to do any act which the grantor could do if present means no more than that the trustee should have full power to do any and all things lawful and necessary to carry out the purposes of the trust which the grantor herself could do, were she living and acting in person, instead of through an intermediary. It is true, however, that Curnutt was a trustee for Mrs. Crockett, as well as for the other parties named in the trust instrument. He held the property in trust for her for life, and by the same authority held the remainder in trust for those whom she had designated to receive it. So far, therefore, as the trust was imposed upon him for her benefit, it died with her, because its purpose in that respect had been fully accomplished; but upon the same principle the trust remained existent and valid for the benefit of the other beneficiaries until the duty imposed upon him had been fully performed. The case of *Leaver v. Gauss,* 62 Iowa, 314, relied upon by the appellee, is not in point. The controversy there turned upon a written instrument, having in other respects the form of a deed of land, but containing the following qualifications: " It is hereby agreed and understood between the grantors and grantee that the grantee *shall have no interest* in the said prem-

*6. CONSTRUCTION: extent of trustees' power.*

ises as long as the grantors or either of them shall live, and that after the death of both the said grantors the grantee shall have and hold the premises by fee-simple title." We there held that, inasmuch as the parties had in express words and as a part of the writing agreed that the grantee should have " no interest " in the property until after the grantor's death, it was not within the province of the court to say that any interest did pass at once on the delivery of the instrument. Such being the case, and no present interest passing with the delivery of the paper, it could not operate as a deed; and, not being witnessed as a will, it could have no effect as a testamentary disposition of the property. Neither the deed nor the declaration of trust in the present case has any provision which is the expressed or implied equivalent of that upon which the Leaver Case was decided.

We note, in closing, the claim of the appellee that the trust cannot be upheld because the corporate capacity of two of the beneficiaries was not proved upon the trial. No

7. BENEFICIARIES: corporate capacity.

issue was raised by the pleadings requiring such proof; but, waiving that feature of the case, the proposition has no support in the authorities. Cases may be found where deeds or gifts made or attempted to be made direct to an unincorporated association have been avoided; but trusts, otherwise valid, especially when in aid of religious, charitable, or educational enterprise, are not held void because of lack of corporate capacity in the beneficiary. *Johnson v. Mayne,* 4 Iowa, 180; *Miller v. Chittenden,* 4 Iowa, 252; *Byers v. McCartney,* 62 Iowa, 339; *Seda v. Huble,* 75 Iowa, 429.

It follows from what we have said that the district court should have sustained the cross-petition of the defendants and dismissed the petition of plaintiff. Decree accordingly will be entered in this court, if the appellants so elect, within twenty days from the filing of this opinion; otherwise, the cause will be remanded for decree in the court below.— *Reversed.*