*594 OPINION.
Smith:
The petitioner alleges that the respondent erred in computing his tax liability^ for the year 1923 in disallowing the deduction claimed on account of a loss upon the sale of buildings, and in including in taxable income the amount of $100,000 received in that year as consideration for the sale of the buildings.
The respondent contends that there was not in fact a sale of the buildings in question which, for income-tax purposes, may be considered a separate and closed transaction resulting in a profit or loss to the owners, but that the purported sale of the buildings and the lease of the premises must be considered as a single transaction. He contends that the $100,000 received from the lessee in the year 1923 is in the nature of a cash bonus paid for the leasehold.
We think that the respondent’s contention must prevail to the extent that the sale of the buildings was not a separate transaction resulting in a loss to the petitioner. The evidence . indicates that the parties themselves, the petitioner and the East Sixty-Third Euclid Co., did not intend a sale of the buildings as a separate transaction from the rental of the land.
In the agreement under which the transaction was completed, that is, the offer and acceptance of June 16, 1923, the East Sixty-Third Euclid Co. offered first “ to enter into a ninety-nine year lease for the property owned and controlled by you at the corner of East 63rd Street and Euclid Avenue upon the terms and conditions of the lease hereto attached,” and to pay in addition to the rents specified in the lease $100,000 for the buildings on the premises. The lease referred to, parts of which are shown above, provided that the lessor should have a lien on the buildings for the payment of rents and that the lessee would keep the buildings insured for the benefit of the lessor, and that at the expiration of the lease the buildings would revert to the lessor. The lessee was not privileged to remove the buildings without giving bond to the lessor in the amount of $150,000 to guarantee the construction of other buildings upon the premises at a cost of not less than $200,000., In other respects the lease appears to conform to the usual and ordinary type of long-term lease of similar property. It is not shown that any deed or other instrument of conveyance was ever executed in respect to the buildings.
The facts here seem indistinguishable from those in Minneapolis Syndicate, 13 B. T. A. 1303. In that case the petitioner owned certain real estate in Minneapolis, Minn., and—
*595 On December 27, 1906, petitioner executed and delivered to Richard M. Bradley, Arthur Lyman and Russell Tyson, trustees, a warranty deed in regular form to the improvements known as the Syndicate Block and situated on the westerly half of block 87 of the City of Minneapolis. This deed evidenced receipt of “one.dollar and other good and valuable considerations.” One recital of this deed was :
This deed is made contemporaneously, and as a part of one transaction, with the execution and delivery by the party of the first part to the parties of the second part of a ground-lease of the lands above described for a term of one hundred and thirty (180) years, from the first day of January, 1907, to and including the 31st day of December, 2036.
On the same date petitioner, as lessor, and these three trustees mentioned, as lessees, executed an indenture whereby the use of the westerly one-half of block 87, referred to above, was demised to the lessees for a period of 130 years from that date, in return for considerations stated to be (a) the purchase of the building by the lessees under the deed referred to, (b) an agreement to pay a yearly rental of $61,000 during the term of the lease, and (c) various covenants binding the lessees to pay all taxes and public charges; to keep the property free of liens; to keep the building fully insured for the benefit of the lessor, the proceeds in case of destruction to be used for replacing it; to keep the premises in repair, and if demolished by lessee, then to replace with a building of a value of not less than $500,000; and, finally, to return the premises at the conclusion of the lease term with improvements maintained, or reconstructed as agreed upon, and with a then value of not less than $500,000, these improvements to be the absolute property of the lessor.
The foregoing is taken from our findings of fact in that case. The respondent was there contending that the sale of the building and the lease of the land were separate and distinct transactions and that since the petitioner sold the building, which on its books represented a cost of $640,000, for $250,000 cash, it thereby sustained a loss of $390,000, and invested capital was accordingly reduced by that amount. We held that the transaction was in fact, in so far as it affected the petitioner’s liability, a lease of the entire property, including the land and building, for a cash consideration of $250,000 and a yearly rental of $61,000. In our opinion we said:
However, on examination of the deed and lease executed on December 27, 1906, and consideration of all the circumstances of the transaction carried into effect thereby, we are convinced that these can not be considered as two transactions with a separate and individual loss or gain in each as the case may be. We are unable to accept respondent’s theory of a loss incurred when the transaction shows a result entirely inconsistent with such conclusion. * * *
In the transaction in question this petitioner received $250,000 in cash, a fixed net income of $61,000 per year for a term of 130 years, and a reversion of the property at the end of that time, and the total cost to petitioner of the property involved was $836,229.04. The value alone of the net income contracted for, capitalized at 6 per cent, was in excess of $1,000,000, and yet we are asked to conclude that a loss of $390,000 was sustained.
*596 Petitioner insists that the deed and lease executed on December 27, 1906, were, merely incidents of one transaction in which it disposed of the use of its property for the term of 130 years for a cash payment of $250,000 and an annual rental of $61,000 per year.
It is an unquestioned rule of construction that two instruments executed in carrying out the same transaction must be read and construed together in determining the intent of the parties, and that such intent will be given effect irrespective of the particular names given the individual instruments by the parties or the particular form in which they are drawn. Fidelity Trust Co. v. McKeithan Lumber Co., 212 Fed. 229; O’Neil v. Caples, 257 Ill. 528; 101 N. E. 50; Huylers v. Ritz Carlton Restaurant & Hotel Co., 1 Fed. (2d) 491; Lewis v. Curnutt, 130 Iowa 423; 106 N. W. 914; Crabtree v. Crabtree, 136 Iowa 430; 113 N. W. 923; Jacobs v. All Persons, etc., 12 Cal. App. 163; 106 Pac. 896; Metropolitan Securities Co. v. Ladd, 173 Fed. 269.
* # . * * * # %
In the case before us it can not be questioned that these two instruments were executed as parts of one single transaction. Both instruments by express recital bear witness to this fact. The execution of the deed and the payment of $250,000 cash is expressly stated by the lease to be one of the considerations for its execution.. We must, under the rule of const, uction laid down, construe these instruments as if they were one, and the ultimate interest received by the grantees under both, so construed, must be considered as represented by the total of the considerations received under each by petitioner.
* sis * * * * *
By this transaction petitioner has, in fact, only surrendered the use and occupancy of its property for a term of 130 years, at the end of which time it will stand possessed of it again. The total consideration to it for this transaction was $250,000 cash and a yearly rental of $61,000. The identical result, in so far as benefits and ultimate interest received are concerned, would have been effected by the execution of a lease to land and buildings, with the same privileges and restrictions stated, for a cash bonus of $250,000 and a yearly rental of $61,000 * * *.
In the instant case the petitioner’s beneficial interest resulting from the transaction was substantially the same as if he had executed a similar lease of the entire property for a term of 99 years for a cash consideration of $100,000 and yearly rentals as stipulated in the lease. We conclude, therefore, that the petitioner did not sustain a deductible loss upon the sale of his interest in the buildings in question in the taxable year 1923. Nor is there evidence upon which we can determine that a loss was sustained upon the transaction as a whole. We do not know the cost to the petitioner of his interest in the land exclusive of the buildings or the fair rental value of the land at the time the transaction was made.
In Minneapolis Syndicate, supra, we did not decide the question of the taxpayer’s liability for income tax upon the cash consideration for the lease in the year when received, since the transaction occurred in a year prior to any taxable period under consideration. In the case at bar the cash consideration was received by the petitioner during the taxable year under consideration and the petitioner alleges *597 that the respondent has erroneously included the amount thereof in his income of that year. Section 213(a) of the Revenue Act of 1921 provides in part that gross income—
includes gains, profits, and income derived from salaries, wages, or compensation for personal service * * * of whatever kind and in whatever form paid, or from professions, vocations, trades, businesses, commerce, or sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property; also from interest, rent, dividends, securities, or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever. The amount of all such items (except as provided in subdivision (e) of section 201) shall be included in the gross income for the taxable year in which received by the taxpayer, unless, under methods of accounting permitted under subdivision (b) of section 212, any such amounts are to be properly accounted for as of a different period * * *.
Regardless of the method of accounting employed by the petitioner, which is not shown in the evidence before us, we think that $75,000 (three-fourths) of the $100,000 received by him from the lessee in the year 1923 is taxable income to him and his wife in that year.

Judgment will be entered under Bule BO.